NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-12-1140-KiDH |
| ) | |
| MARYETTA C. MARKS, ) | Bk. No.   10-42867-SK |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| MARYETTA C. MARKS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| KATHY A. DOCKERY, Chapter 13 ) | |
| Trustee; WELLS FARGO BANK, ) | |
| N.A., Trustee for Option One ) | |
| Mortgage Loan Trust 2007-6, ) | |
| Asset-Backed Certificates, ) | |
| Series 2007-6, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on November 15, 2012,
at Pasadena, California

Filed - December 14, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

---

Appearances:    Appellant MaryEtta C. Marks argued pro se; Joseph
                C. Delmotte, Esq. of Pite Duncan, LLP, argued for
                Appellee Wells Fargo Bank, N.A., Trustee for Option
                One Mortgage Loan Trust 2007-6, Asset-Backed
                Certificates, Series 2007-6.

---

Before: KIRSCHER, DUNN, and HOLLOWELL, Bankruptcy Judges.

---

    [1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Appellant, chapter 13[2] debtor MaryEtta C. Marks ("Marks"), appeals an order from the bankruptcy court granting a motion for relief from the automatic stay filed by appellee, Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-6, Asset-Backed Certificates, Series 2007-6 ("Wells Fargo"). We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. The first and second motions for relief from stay.**

On February 7, 2007, Marks obtained a loan ("Loan") for $609,987.00 from Option One Mortgage Corporation ("Option One") for a residence located in Los Angeles ("Property"). In exchange for the Loan, Marks executed a promissory note ("Note") secured by a first deed of trust ("DOT") in favor of Option One.

Marks eventually defaulted on the Loan, and on February 22, 2010, a Notice of Default ("NOD") was recorded against the Property in Los Angeles County. The NOD identified the DOT and its beneficiary as Option One. Default Resolution Network was identified as the agent authorized to file the NOD. American Home Mortgage Servicing, Inc. ("AHMSI") was listed as the contact for payment and any other information regarding the foreclosure.

On July 20, 2010, a Notice of Trustee's Sale ("NOS") was recorded against the Property in Los Angeles County. The NOS identified the DOT beneficiary as Option One, and Power Default Services, Inc. was identified as trustee. A sale was set for August 9, 2010.

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

To fend off foreclosure, Marks filed a skeletal chapter 7 bankruptcy petition on August 6, 2010, thereby invoking the protections of the automatic stay under § 362(a). In her Schedule A filed on August 20, 2010, Marks listed the Property with a value of $739,000, subject to a secured claim for $667,294.00. In her Schedule D, Marks listed AHMSI as the secured creditor holding the claim referenced in her Schedule A. Marks also listed Option One and Sand Canyon Corporation ("Sand Canyon") as having a security interest in the Property with secured claims valued at $0.00, noting that each entity "claim[ing] that AHMSI is same created confusion."

On September 17, 2010, the beneficial interest in the DOT was assigned to Wells Fargo ("Assignment"). The Assignment describes the DOT and reflects the assignor as Sand Canyon, f/k/a Option One. It contains both a handwritten and stamped signature by Joseph Kaminski, Assistant Secretary of Sand Canyon. In the upper left corner, it states that recording was requested by AHMSI, "successor in interest" to Sand Canyon, f/k/a Option One. The Assignment was recorded in Los Angeles County on October 4, 2010.

Meanwhile, on September 29, 2010, Wells Fargo moved for relief from the automatic stay ("First Motion for Relief") under § 362(d)(1) to proceed with foreclosure of the Property. In support, Wells Fargo offered a declaration from Brenda Harris, an employee of AHMSI, who was the "authorized loan servicing agent for [Wells Fargo]." Harris stated that Wells Fargo held the Note and that Option One had assigned its beneficial interest in the DOT to Wells Fargo. Attached to the motion was a copy of the Note, the DOT, and (at that time) the unrecorded Assignment.

-3-

Marks opposed the First Motion for Relief, contending that an adequate equity cushion existed on the Property. In her declaration, Marks stated that negotiations for a loan modification had broken down with AHMSI, whom she was told held the Note, which forced her to file bankruptcy to "prevent the illegal foreclosure sale of [her] property." Marks claimed she never received a copy of the NOD, and that she only found out about the scheduled trustee sale through her Theft Protection Shield Plan.

Two weeks after Wells Fargo had filed its First Motion for Relief, Marks moved to convert her case to chapter 13. On November 23, 2010, the bankruptcy court denied the motion to convert for Marks's failure to properly serve it in accordance with local rule. Notwithstanding the denial, the case has been mistakenly treated as having (and continues to be administered as if it had) been converted to chapter 13 and was reassigned from the Hon. Ellen Carroll to the Hon. Sandra Klein. As a result of the conversion, the First Motion for Relief was removed from the court's calendar.

Marks's First Amended Chapter 13 Plan, which provided for direct payments to Wells Fargo on the nearly $76,000 arrearage on the Loan, was confirmed on May 13, 2011.

On June 8, 2011, Wells Fargo again moved for relief from stay ("Second Motion for Relief") under § 362(d)(1) because Marks had failed to make sufficient pre- and postpetition payments on the Loan. In support, Wells Fargo offered a declaration from Carolyn J. Moore, an employee of AHMSI. Unlike the Harris declaration, Moore did not state that AHMSI was the authorized loan servicing

-4-

agent for Wells Fargo, or that Wells Fargo was the holder of the Note entitled to payments. She did, however, state that Option One had assigned its beneficial interest in the DOT to Wells Fargo. Attached was a copy of the Note, the DOT, and the since-recorded Assignment to Wells Fargo.

Marks filed an untimely opposition to the Second Motion for Relief on July 6, 2011, in which she contended Wells Fargo had failed to indicate the connection between AHMSI, whose employee signed the declaration in support, and Wells Fargo, to whom she claimed she had been making regular payments pursuant to a loan modification agreement and her chapter 13 plan. Marks asserted that AHMSI was a stranger to the Loan.

A hearing on the Second Motion for Relief was held on July 14, 2011, before the Hon. Peter Carroll. Warren L. Brown, Esq. ("Brown") appeared for Marks. The bankruptcy court noted that the issue with regard to the connection between AHMSI and Wells Fargo was a similar issue to that raised in <u>Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)</u>, 450 B.R. 897, 906 (9th Cir. BAP 2011), and, based on the evidence provided, Wells Fargo had not made the connection between it and AHMSI:

> And, specifically I have to agree with the Debtor that I can't make a connection based on the evidence in support of the motion between [AHMSI] and Wells Fargo. Now <u>Wells Fargo certainly has standing to bring the motion according to the paperwork that's attached</u>. But the declaration that ties everything together is signed by Carolyn Moor [sic], who is the Assistant Secretary of [AHMSI], and it doesn't refer to Wells Fargo or even claim to have a connection with Wells Fargo. It is as if [AHMSI] is bringing this motion. It does reference the deed of trust that was assigned to Wells Fargo, but does not state anywhere that it is the duly authorized servicing agent for Wells Fargo and has authority to make this declaration and to state what funds are owing on the note and to Wells Fargo secured by the deed of trust on

-5-

the property.

Hr'g Tr. (July 14, 2011) 1:21-2:13 (emphasis added).  Counsel for Wells Fargo requested a continuance to file a supplemental declaration regarding AHMSI's role as loan servicer for Wells Fargo, but also noted that a continuance would be appropriate if Marks was working with AHMSI on a loan modification.  The bankruptcy court granted the continuance, but Wells Fargo later withdrew the Second Motion for Relief to give Marks additional time to pursue a loan modification.

**B.    The third motion for relief from stay.**

On January 9, 2012, Wells Fargo filed a third motion for relief from stay ("Third Motion for Relief"), wherein it requested relief under § 362(d)(1) for Marks's failure to tender postpetition payments due and owing under the Note.  In support, Wells Fargo offered a declaration from Demetrius Foster, an employee of AHMSI.  Foster stated that, by contract, AHMSI was the authorized loan servicing agent for Wells Fargo and that Option One had assigned its beneficial interest in the DOT to Wells Fargo.  Attached was a copy of the Note, the DOT, and a copy of the Assignment without the related recording document.  A hearing was scheduled for February 1, 2012.

On January 19, 2012, an untimely opposition to the Third Motion for Relief was filed by alleged creditor, Rev. C.R. Tillman ("Tillman").  Tillman contended that Wells Fargo lacked standing and that it should be sanctioned for bringing a "fraudulent motion with deceptive exhibits."  Attached to Tillman's opposition was a copy of an objection he had filed in November 2011 in response to an additional fee request by Brown.  In that opposition, Tillman

-6-

contended Marks owed him $499.00 for title and legal research he claimed helped "defeat" Wells Fargo's previous motions for relief from stay. Tillman further contended his research revealed that the Assignment to Wells Fargo was void since it violated the stay in Marks's case, and the Assignment was also unenforceable under In re Veal because it failed to assign the Note with the DOT.

Eight days after he filed his first objection, Tillman filed a second untimely objection to the Third Motion for Relief, which was similar to the first, but this one contained a declaration from Marks. Marks contended that Wells Fargo had not produced any evidence that it held the Note. She further argued that Wells Fargo lacked standing to enforce the Note because it had not been properly endorsed. Marks stated her intent to file complaints against Wells Fargo with the U.S. Trustee's Office, the U.S. Attorney General, the NAACP, the FBI, and the Secret Service Office, due to Wells Fargo's forgery and false document procurement in lending transactions.

One day before the scheduled hearing, Marks, now appearing pro se, filed her own untimely opposition to the Third Motion for Relief. She contended that both AHMSI and Wells Fargo failed to establish "standing" as directed by Judge Carroll at the hearing on the Second Motion for Relief. In her supporting declaration, Marks contended that AHMSI had not shown how it came into possession of the Note or shown any proof of agency. Marks also contended that Wells Fargo had failed to show any proof of agency, or how or when it was assigned the DOT.

The hearing on the Third Motion for Relief went forward on February 1, 2012, before the Hon. Sandra Klein. Brown, appearing

-7-

for Marks, stated that he did not know Tillman, but he had learned through Marks that Tillman was her minister, who was apparently giving Marks legal advice when Brown's advice was inadequate. Marks then informed the court that Brown had disagreed with her and did not want to file an opposition to the Third Motion for Relief, so she filed her own opposition. The court noted that it had considered Marks's untimely opposition and asked her if she wished to present any argument. Marks questioned the competency of declarant Foster and argued that Wells Fargo had not produced any documents to support Foster's assertions. Marks further argued that no evidence existed showing the chain of assignment regarding her Property. Counsel for Wells Fargo argued that his client had established its standing with the Assignment and the Foster declaration. Counsel noted that Marks was behind eleven payments on her Loan postpetition.

After hearing further argument from the parties, the bankruptcy court found that Wells Fargo had shown a colorable claim for relief and granted the Third Motion for Relief:

> Okay. After considering the evidence submitted by the movant -- I did review, even though it was extremely lately filed, the opposition filed by Ms. Marks -- I do find that there is sufficient evidence of the assignment in the record attached to the motion for relief from stay that was filed by movant in this case.
>
> I understand there may have been issues in the previous motion that was filed before Judge Peter Carroll, but that has been rectified in this motion.
>
> I also do note that in California, the entity foreclosing does not have to produce the note. That's clear case law. I can certainly provide cites. The first that comes to mind is the Gomez [sic] cite that was decided by the California Court of Appeals in 2011. And there are numerous other cites that also hold the same.
>
> So I am going to grant the relief from stay and just

-8-

> state further that this is a summary proceeding. The movant only has to show a colorable claim for relief. And I find that based upon the evidence in the record, they have shown that. So I'm granting the movant's motion under [§ 362](d)(1).

Hr'g Tr. (Feb. 1, 2012) 7:9-8:4. The court announced that it did not consider Tillman's opposition because he was not an attorney or a party to the case.

Before the bankruptcy court entered an order on the Third Motion for Relief, Tillman filed a one-page motion for reconsideration, which consisted of one sentence and lacked any legal reasoning.

On February 3, 2012, the bankruptcy court entered an order granting the Third Motion for Relief under § 362(d)(1)("Stay Relief Order").[3]

On February 15, 2012, Marks filed a joinder to Tillman's one-sentence motion for reconsideration under Civil Rule 59(e) and a request for evidentiary hearing. Marks contended that after the February 1 hearing, she realized she had not received copies of the exhibits attached to Wells Fargo's Third Motion for Relief, i.e., the Note, the DOT, and the Assignment, prior to the hearing. She later received copies from Brown on February 2. Marks argued that reconsideration of the Stay Relief Order was warranted because the exhibits provided newly discovered evidence with respect to Wells Fargo's standing to bring the Third Motion for Relief and to Wells Fargo's fraud.

Specifically, Marks argued that AHMSI's name did not appear in the body of the NOD, but was only referenced in the upper left

---

[3] For reasons unknown, the court entered a second identical order on February 7, 2012.

-9-

corner of the document. Marks further argued that the signature of Joseph Kaminski on the Assignment to Wells Fargo was illegible, and his stamped signature consisted of what is now commonly referred to as "robo-signing." In addition, the notary's acknowledgment did not establish that Kaminski actually appeared before her when signing. Therefore, according to Marks, the Assignment was fraudulent on its face. Marks further argued that although AHMSI was identified in the Assignment as the "successor in interest" to Sand Canyon, f/k/a Option One, no assignment to AHMSI existed in the public record.

Marks filed a second reconsideration motion and request for evidentiary hearing two days later on February 17, 2012. She refined her arguments raised in the first motion, contending that: (1) the real party in interest was Option One, not AHMSI or Wells Fargo; (2) the Assignment was invalid on its face because it was "robo-signed;" and (3) California law requires assignees to record their assignments before exercising their power of sale, and no assignment to AHMSI from Sand Canyon, f/k/a/ Option One had been recorded. In her declaration, Marks stated that she conducted a title search on the Property on February 16, 2012, which showed the Assignment had not been recorded. She identified the "title search" as "Exhibit 8," which consisted of a copy of a 1996 quitclaim deed showing a gift transfer of interest in the Property from Willie J. Marks and Marks as joint tenants to Marks as sole owner, and copies of the Note, the DOT, the NOD, the NOS, and a notice of Marks's bankruptcy filing. In sum, Marks contended Wells Fargo had failed to provide any written document showing a transfer of the interest in the Property from Option One to any

-10-

other entity, be it AHMSI, Sand Canyon, or Wells Fargo.

A hearing on the reconsideration motions was held on February 29, 2012. The bankruptcy court denied the motions, rejecting Marks's argument of not having received Wells Fargo's exhibits prior to the hearing as a basis for newly discovered evidence; the court had received the exhibits and considered them, so no newly discovered evidence existed.

After the bankruptcy court had ruled and went off the record, Tillman appeared and presented argument on his one-sentence motion for reconsideration. In short, he argued that the Assignment was invalid because it was done postpetition in violation of the stay. The court informed Tillman that assignments are not impacted by the stay, and that a creditor is free to assign its interest to whomever it wants. After hearing further argument from Tillman, the court again denied the motions for reconsideration, and, specifically, denied Tillman's motion because it failed to provide any supporting facts or argument. The court entered an order denying both motions for reconsideration on March 22, 2012 (the "Reconsideration Order").

Marks timely filed an amended Notice of Appeal on March 26, 2012.[4]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

---

[4] On March 28, 2012, Marks filed a motion for stay pending appeal, which Wells Fargo opposed. The bankruptcy court denied that motion on May 2, 2012.

-11-

## III. ISSUES

1.   Did the bankruptcy court abuse its discretion when it granted Wells Fargo's Third Motion for Relief?

2.   Did the bankruptcy court abuse its discretion in denying the motions to reconsider the Stay Relief Order?

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's order granting relief from the automatic stay for an abuse of discretion. Gruntz v. Cnty. of L.A. (In re Gruntz), 202 F.3d 1074, 1084 n.9 (9th Cir. 2000)(en banc); Edwards v. Wells Fargo Bank, N.A. (In re Edwards), 454 B.R. 100, 104 (9th Cir. BAP 2011).  Likewise, the bankruptcy court's denial of a motion for reconsideration is reviewed for an abuse of discretion. OneCast Media, Inc. v. James (In re OneCast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).  A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We review de novo whether a party has standing. Mayfield v. United States, 599 F.3d 964, 970 (9th Cir. 2010); In re Veal, 450 B.R. at 906.  De novo means review is independent, with no deference given to the trial court's conclusion. Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010).

## V. DISCUSSION

**A.   The bankruptcy court did not err in determining that Wells Fargo had standing to prosecute the Third Motion for Relief.**

Marks contends on appeal that the Assignment to Wells Fargo

-12-

is void, or fraudulent, or otherwise ineffective.  On this basis, she asserts that Wells Fargo lacked standing to prosecute the Third Motion for Relief.

**1.    Standing**

Standing is a threshold matter of jurisdiction.  <u>In re Edwards</u>, 454 B.R. at 104.  The issue of standing involves both "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise."  <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975); <u>In re Veal</u>, 450 B.R. at 906.  Only prudential standing is at issue in this appeal.[5]  Prudential standing requires the plaintiff to assert its own legal rights rather than the legal rights of others.  <u>Dunmore v. United States</u>, 358 F.3d 1107, 1112 (9th Cir. 2004).

Motions for relief from stay are contested matters under Rule 9014.  Rule 9014(c) provides that Rule 7017, which in turn incorporates Civil Rule 17(a), is applicable to contested matters.  Civil Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest . . . ."  Thus, to satisfy the requirements of prudential standing and Civil Rule 17(a)(1), "the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right."  6A Wright, Miller, Kane & Marcus, FED. PRAC. & PROC., CIV. ¶ 1543 (3d ed. 2011); <u>In re Veal</u>, 450 B.R. at 908.  Simply put, the party moving for relief from the automatic stay must be

---

[5] Constitutional standing is satisfied because Wells Fargo established the minimum requirements of injury in fact, causation, and redressability.  The automatic stay's prohibition on Wells Fargo's right to exercise its alleged nonbankruptcy rights could be redressed by obtaining relief from stay.  <u>See</u> <u>In re Veal</u>, 450 B.R. at 906.

-13-

the "real party in interest."

The stay under § 362(a) is extremely broad in scope and prohibits almost any type of formal or informal collection or legal action against a debtor or the property of the estate. Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 495, 503 (1986). The automatic stay prevents continuation of a foreclosure proceeding concerning a debtor's property, or property of a bankruptcy estate, during the pendency of the bankruptcy case. Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai), 581 F.3d 1090, 1093 (9th Cir. 2010).

Under § 362(d), a "party in interest" can request relief from the automatic stay. Section 362(d)(1) authorizes relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." The Code does not define the term "party in interest." Thus, whether a moving party is a "party in interest" under § 362(d) is determined on a case-by-case basis, taking into account both the claimed interest and how that interest is affected by the automatic stay. In re Veal, 450 B.R. at 913; Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009). A "party in interest" can include any party that has a pecuniary interest in the matter, that has a practical stake in the resolution of the matter, or that is impacted by the automatic stay. Brown v. Sobczak (In re Sobczak), 369 B.R. 512, 517-18 (9th Cir. BAP 2007).

Proceedings to decide motions for relief from the automatic stay are very limited in scope. Such proceedings "should not involve an adjudication on the merits of claims, defenses, or

-14-

counterclaims, but simply determine whether the creditor has a colorable claim to the property of the estate." Biggs v. Stovin (In re Lux Int'l, Ltd.), 219 B.R. 837, 842 (9th Cir. BAP 1998) (emphasis added). See In re Veal, 450 B.R. at 913 (holding same and citing First Fed. Bank of Cal. v. Robbins (In re Robbins), 310 B.R. 626, 631 (9th Cir. BAP 2004)). Veal recognized that a movant has a colorable claim under § 362 if it either: (1) owns or has another form of property interest in a note secured by the debtor's (or the estate's) property; or (2) is a "person entitled to enforce such a note under applicable state law." 450 B.R. at 910. We note, however, that Veal is distinguishable from the instant case because Veal was applying Illinois law, which follows the common law rule under the Uniform Commercial Code ("UCC") that a mortgagee must hold the note to foreclose. Id. at 916. Likewise, under the common law rule, an assignment of a mortgage without the note is a nullity. Id. In Veal, the Panel determined that the mortgagee failed to establish its standing to obtain relief from the automatic stay because it could not show that it possessed the note, or that it had an interest in the note. Id. at 918. In this case, California law applies,[6] which has altered the common law rule by statute.

Veal recognized that states within the Ninth Circuit, including California, have enacted nonjudicial foreclosure

---

[6] The DOT, the security instrument at issue, contains a choice of law provision, which states that it shall be governed by federal law "and the law of the jurisdiction in which the Property is located." Here, that would be California. As the Panel held in Veal, the forum state's choice of law rules determine which state's substantive law applies. 450 B.R. at 916 n.32. As for the Property at issue here, California uses deeds of trust as opposed to mortgages as the security instrument for the note.

-15-

statutes that may have changed the common law rule. Id. at 916-17 & n.34. Veal further recognized that "the minimum requirements for the initiation of foreclosures under applicable nonbankruptcy law will shape the boundaries of real party interest status under Civil Rule 17 with respect to relief from stay matters. As a consequence, the result in a given case may often depend upon the situs of the real property in question." 450 B.R. at 917 n.34.

California's nonjudicial foreclosure statutes are governed by CAL. CIV. CODE ("CCC") §§ 2924 through 2924k, which do not require that the note be in the possession of the party initiating foreclosure. Debrunner v. Deutsche Bank Nat'l Trust Co., 138 Cal. Rptr. 3d 830, 835 (Cal. Ct. App. 2012)(string citations omitted); Lane v. Vitek Real Estate Indus. Grp., 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010)("There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, [CCC § 2924(a)(1)] broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure. Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale."); Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009)(same); Haque v. Wells Fargo Bank, NA, 2011 WL 3360026, at *3 (N.D. Cal. Aug. 2, 2011)("The original note need not be produced in order to initiate nonjudicial foreclosure."). The comprehensive statutory framework established to govern nonjudicial foreclosure sales in CCC § 2924 et seq. is intended to be exhaustive. Moeller v. Lien, 30 Cal. Rptr. 2d 777, 785 (Cal. Ct. App. 1994)(citing Homestead Sav. v. Darmiento,

-16-

281 Cal. Rptr. 2d. 367 (Cal. Ct. App. 1991)).

**2.   Analysis**

Therefore, in California, a party with a nonbankruptcy right to commence foreclosure proceedings may have prudential standing - i.e, a colorable claim to the property - to prosecute a motion for relief from stay.  Hence, to the extent Marks contends Wells Fargo had to show that it held the Note, or an interest in the Note, or produce the actual Note to establish its standing to prosecute the Third Motion for Relief, she is incorrect.  Given that Wells Fargo could commence foreclosure of the Property without the Note, it certainly would not need to possess or show any interest in the Note in the lesser action of establishing a colorable claim entitling it to relief from stay.

We conclude, on this record, Wells Fargo demonstrated that it had a colorable claim to the Property.  In other words, Wells Fargo made the connection Judge Carroll said was lacking between AHMSI and Wells Fargo with respect to the Second Motion for Relief.  His concern in that motion was that AHMSI had failed to establish its role in the scheme of things, not that Wells Fargo lacked standing.  In fact, Judge Carroll expressly found that Wells Fargo <u>had</u> established standing based on the documents submitted.  In support of the Third Motion for Relief, Wells Fargo offered the Foster declaration.  Foster stated that Option One had assigned its beneficial interest in the DOT to Wells Fargo and that AHMSI was the authorized loan servicing agent for Wells Fargo.  Attached was a copy of the Note, the DOT, and the Assignment.  The Assignment is executed by Sand Canyon, f/k/a Option One, the original beneficiary under the DOT, and indicates

-17-

that all beneficial interest under the DOT was assigned to Wells Fargo on September 17, 2010. Although Wells Fargo did not include proof that the Assignment had been recorded (which it had been on October 4, 2010), the document establishing this fact was submitted with its Second Motion for Relief and was part of the record. Furthermore, this fact is a matter of public record of which the bankruptcy court was free to take judicial notice. FED. R. EVID. 201.

As the beneficiary under the DOT, Wells Fargo may commence the foreclosure process against the Property. See CCC § 2924(a)(1); Debrunner, 138 Cal. Rptr. 3d at 835. Accordingly, these foreclosure rights give Wells Fargo a colorable claim in the Property, and therefore it had standing to prosecute the Third Motion for Relief. We reject all of Marks's arguments to the contrary, most of which are an attempt to circumvent California's lack of a cause of action to determine whether or not a party has authority to institute foreclosure proceedings. See Gomes v. Countrywide Home Loans, 121 Cal. Rptr. 3d 819, 824-25 (2011).

Marks first contends that Wells Fargo lacks standing because the NOD lists Option One as the beneficiary as opposed to Wells Fargo. First, this argument exceeds the scope of what the bankruptcy court had to determine in the Third Motion for Relief, which was whether Wells Fargo established its foreclosure rights under the DOT. Any technical defects in the NOD should be raised in state court, if anywhere. Second, regardless of which entity was listed as beneficiary in the NOD, which at the time was Option One, the NOD complies in all respects with CCC § 2924(a)(1)(A)-

-18-

(D).[7]  Further, Marks has not established how she is prejudiced by the fact that Option One was the named beneficiary in the NOD. See Debrunner, 138 Cal. Rptr. 3d at 837-38.

Next, Marks challenges the validity of the Assignment.  She first contends the Assignment is void on its face because it was not recorded in a timely manner, citing "CCC § 2924(h)(c)."  No such statute exists.  If she means CCC § 2924h(c), this statute governs bidders at trustee sales and has no relevance to recording assignments of deeds of trust.  To the extent she contends CCC § 2932.5[8] applies, that statute governs an assignee's ability to exercise its power of sale once the assignment is duly acknowledged and recorded.  However, the majority of California courts have held that the recording requirements in CCC § 2932.5 apply only to mortgages and not deeds of trust.[9]  Regardless,

_____

[7] That statute requires a notice of default to identify the deed of trust, contain a statement that a breach of the obligations under the note has occurred, contain a statement setting forth the nature of each breach actually known to the beneficiary and of its election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust that is in default, and, if applicable, provide the notice statement specified in CCC § 2924c(b)(1).  The NOD provides all of these things.

[8] CCC § 2932.5 provides:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

[9] See Calvo v. HSBC Bank USA, N.A., 130 Cal. Rptr. 3d 815, 819 (Cal. Ct. App. 2011), rev. denied (Cal. Jan. 4, 2012)("The rule that section 2932.5 does not apply to deeds of trust is part of the law of real property in California."); Caballero v. Bank of
(continued...)

-19-

Marks is still incorrect because the record reflects that the NOD was recorded in Los Angeles County on October 4, 2010, which was only eighteen days after it was executed. Thus, it was recorded and in a timely manner.

Marks also contends that the Assignment is void because it was signed by "robo-signer" Joseph Kaminski. Although Marks does not explain what a "robo-signer" is, it appears to be someone, generally a bank employee, "who signs thousands of foreclosure documents regularly, swearing to the veracity of the information contained in them, but in reality does not have personal knowledge of the case." See S.T.O.P. Stop Taking Our Property,

---

[9](...continued)
Am., 2012 WL 475766, at *1 (9th Cir. Feb. 15, 2012)("For the reasons stated in Calvo and the many district court decisions that have reached the same conclusion . . . we find no 'convincing evidence' that the California Supreme Court would hold that California Civil Code section 2932.5 applies to deeds of trust."); In re Salazar, 470 B.R. 557, 560 (S.D. Cal. 2012)("the Court finds that § 2932.5 does not apply to deeds of trust."); Lindsay v. America's Wholesale Lender, 2012 WL 83475, at *2 (C.D. Cal. Jan. 10, 2012)("Section 2932.5 'does not require the recordation of an assignment of beneficial interest for a deed of trust, as opposed to a mortgage.'")(quoting Caballero v. Bank of Am., 2010 WL 4604031, at *3 (N.D. Cal. 2010)(emphasis in original)); Yau v. Deutsche Bank Nat'l Trust Co. Americas, 2011 WL 5402393, at *9 (C.D. Cal. Nov. 8, 2011)("[Section 2932.5] does not apply where the power of sale is set forth in a deed of trust. Section 2932.5 applies only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee.")(citation omitted); Herrera v. Fed. Nat'l Mortg. Ass'n, 141 Cal. Rptr. 3d 326, 337 (Cal. Ct. App. 2012)("It is well established that section 2932.5 does not apply to trust deeds in which the power of sale is granted to a third party, the trustee. Section 2932.5 applies to mortgages, in which the mortgagor or borrower has granted a power of sale to the mortgagee or lender."); Haynes v. EMC Mortg. Corp., 140 Cal. Rptr. 3d 32, 34 (Cal. Ct. App. 2012)("That section 2932.5 applies only to mortgages is well settled."). But see In re Cruz, 457 B.R. 806, 814 (Bankr. S.D. Cal. 2011)(Section 2932.5 applies to deeds of trust and the beneficiaries' interest in the deed of trust must be recorded prior to the foreclosure sale).

-20-

http://takeyourhomeback.com/?p=1141 (last visited on Nov. 26, 2012). Marks fails to prove that Kaminski is a robo-signer or, more importantly, to cite any authority supporting her contention that an assignment signed by an alleged robo-signer renders it fraudulent or void. Disparaging terms and unsupported allegations about what might have occurred with respect to the Assignment fail to establish any claim that it is void or that fraud has been perpetrated against Marks.

Marks further contends that AHMSI was required to record its assignment in the DOT from Option One or Sand Canyon, and nothing in the record of title shows a transfer of interest in the Property from Option One or Sand Canyon to AHMSI. Thus, argues Marks, because AHMSI had nothing to assign to Wells Fargo, the Assignment to Wells Fargo is void. In other words, the broken "chain of assignment" invalidates the Assignment from AHMSI to Wells Fargo. Without addressing what is or is not in the record of title, AHMSI has never claimed to be beneficiary of the DOT. Option One was the original beneficiary of the DOT. The Assignment of the DOT was executed by Sand Canyon, f/k/a Option One to Wells Fargo. AHMSI established that it is the authorized loan servicing agent for Wells Fargo.

Next, Marks's contention that California law requires all assignments transferring an interest in real property be publically noticed and recorded misstates the law. California does not require that assignments of a beneficial interest under a deed of trust be recorded. CCC § 2934 provides only that such assignments may be recorded, and a recorded assignment operates as

-21-

constructive notice to the public of the assignee's interest.[10] Further, Marks's evidence (Exhibit 8) showing the "absence" of a recorded assignment of the DOT to AHMSI, does not conclusively establish what is or is not in the record of title. A title report is a more suitable document to establish what Marks contends, presuming that AHMSI, if it ever had a beneficiary interest in the DOT, actually had to record its assignment, which is contrary to California law.[11]

Lastly, Marks argues that Wells Fargo lacked standing due to a violation of the trust agreement that was executed in connection with the securitization of the Loan. In short, Marks contends that the Assignment to Wells Fargo occurred three years after the closing of Trust 2007-6 pursuant to the pooling and servicing agreement, or PSA, so it is therefore void. Despite Marks's contention that she raised this issue before the bankruptcy court

---

[10] CCC § 2934 provides:

Any assignment of a mortgage and any assignment of the beneficial interest under a deed of trust may be recorded, and from the time the same is filed for record operates as constructive notice of the contents thereof to all persons; and any instrument by which any mortgage or deed of trust of, lien upon or interest in real property, (or by which any mortgage of, lien upon or interest in personal property a document evidencing or creating which is required or permitted by law to be recorded), is subordinated or waived as to priority may be recorded, and from the time the same is filed for record operates as constructive notice of the contents thereof, to all persons.

[11] It is not clear why the Assignment in the upper left corner refers to AHMSI as the "successor in interest" to Sand Canyon, f/k/a Option One. Perhaps it is a scrivener's error. Perhaps AHMSI had been assigned a beneficial interest in the DOT at some point. Regardless, as explained above, California law did not require AHMSI to record its purported assignment of the DOT, so any alleged break in the chain of title does not defeat what clearly is Wells Fargo's interest in the DOT.

but the court "overlooked" it, this issue was never raised in connection with any of her oppositions to Wells Fargo's motions for relief. Marks raised this argument for the first time in her motion for stay pending appeal. The order denying that motion is not before us, and we generally will not consider issues raised for the first time on appeal. See United Student Funds, Inc. v. Wylie (In re Wylie), 349 B.R. 204, 213 (9th Cir. BAP 2006). Even if we did consider it, we fail to see how Marks has standing to assert breaches of a trust agreement to which she was not a party or even a third-party beneficiary. Marks has no interest in a trust agreement involving groups of investors in pools of loans. The First Circuit Bankruptcy Appellant Panel rejected this same argument raised by the debtors in Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia), 452 B.R. 319, 324 (1st Cir. BAP 2011). See Washington v. Saxon Mortg. Servs. (In re Washington), 469 B.R. 587, 531 (Bankr. W.D. Pa. 2012)(rejecting same argument); In re Almeida, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009)(holding that because party was not a third-party beneficiary of the PSA he lacked standing to object to any breaches of its terms; investors who bought securities based upon the pooled mortgages were parties with standing to object to defects in those mortgages resulting from failures to abide by the PSA).

Accordingly, we conclude the bankruptcy court did not err when it determined that Wells Fargo had standing to prosecute the Third Motion for Relief.

**B.    The bankruptcy court not abuse its discretion in granting Wells Fargo's Third Motion for Relief.**

Marks's arguments on appeal do not extend beyond challenging

-23-

Wells Fargo's standing to prosecute the Third Motion for Relief. Nonetheless, we note that the bankruptcy court granted relief "for cause" under § 362(d)(1). What constitutes "cause" is determined on a case-by-case basis. In re Kronemyer, 405 B.R. at 921. Once a party seeking relief establishes a prima facie case that cause exists for relief under § 362(d)(1), the burden shifts to the debtor to show that relief from the stay is not warranted. USA v. Gould (In re Gould), 401 B.R. 415, 426 (9th Cir. BAP 2009).

We conclude the record supports the bankruptcy court's finding that "cause" existed to terminate the automatic stay and allow Wells Fargo to exercise its foreclosure remedies against the Property. Wells Fargo established its standing and a colorable claim to the Property. Further, at the time Wells Fargo filed the Third Motion for Relief, Marks had failed to tender eleven postpetition payments owing under the Note, a fact she does not apparently dispute. A debtor's failure to make postpetition mortgage payments as they become due in a chapter 13 case constitutes "cause" for relief from the automatic stay under § 362(d)(1). Ellis v. Parr (In re Ellis), 60 B.R. 432, 435 (9th Cir. BAP 1985); Lomas Mortg. USA, Inc. v. Elmore (In re Elmore), 94 B.R. 670, 678 (Bankr. C.D. Cal. 1988). For these reasons, Marks did not meet her burden to show that relief from stay was not warranted.

Accordingly, the bankruptcy court did not abuse its discretion when it granted Wells Fargo's Third Motion for Relief and terminated the automatic stay.

-24-

**C. The bankruptcy court did not abuse its discretion when it denied the motions for reconsideration.**

A motion under Civil Rule 59(e), incorporated by Rule 9023, should not be granted, absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change of controlling law. 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration is not for rehashing the same arguments made the first time, or to assert new legal theories or new facts that could have been raised at the initial hearing. In re Greco, 113 B.R. 658, 664 (D. Haw. 1990), aff'd and remanded, Greco v. Troy Corp., 952 F.2d 406 (9th Cir. 1991).

Marks offers no argument as to why (or even if) the bankruptcy court abused its discretion when it denied the motions to reconsider the Stay Relief Order. Generally, arguments not raised in a party's opening brief are deemed waived. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999). In any event, Marks argued in her motions that reconsideration was warranted because Wells Fargo's exhibits submitted with its Third Motion for Relief, which she did not receive until after the hearing, provided newly discovered evidence to show its lack of standing and its fraud. Specifically, Marks argued that the copy of the Assignment proved that it was fraudulent on its face.

Under Civil Rule 59(e), "[t]o justify an amendment based on newly discovered evidence, a party 'must show that the evidence was discovered after the judgment, that the evidence could not be discovered earlier through due diligence, and that the newly discovered evidence is of such a magnitude that had the court

-25-

known of it earlier, the outcome would likely have been different.'" <u>Broncel v. H & R Transp., Ltd.</u>, 2010 WL 3582492, at *1 (E.D. Cal. 2010)(quoting <u>Dixon v. Wallowa Cnty.</u>, 336 F.3d 1013, 1022 (9th Cir. 2003)). The bankruptcy court determined that even if Marks had not received Wells Fargo's exhibits until after the hearing as she claimed, the court <u>had</u> received them prior to the hearing and considered them. As such, no newly discovered evidence existed. We also find no merit in Marks's argument because at the time of the hearing she was represented by Brown, who did receive a copy of Wells Fargo's exhibits prior to the hearing. Thus, we see no abuse by the bankruptcy court. In any event, it is undisputed that Wells Fargo included a copy of the Assignment with both its First and Second Motions for Relief. Furthermore, Wells Fargo's exhibits established that the Assignment has been a matter of public record since October 2010.

Accordingly, we conclude the bankruptcy court did not abuse its discretion in denying the motions to reconsider the Stay Relief Order.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM.

-26-