NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-11-1698-MkBePa |
| | ) | |
| GENNADY TIKHONOV and | ) | Bk. No.   SV 11-15614-MT |
| ALBINA TIKHONOV, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| GENNADY TIKHONOV; | ) | |
| ALBINA TIKHONOV, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| THE BANK OF NEW YORK MELLON | ) | |
| TRUST CO., N.A., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Submitted Without Oral Argument
on November 15, 2012[**]

Filed – December 14, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen Tighe, Bankruptcy Judge, Presiding

_____

Appearances:   Appellants Gennady and Albina Tikhonov pro se on brief; Bernard J. Kornberg, Adam N. Barasch and Jan T. Chilton of Severson & Werson on brief for appellee The Bank of New York Mellon Trust Co., N.A.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]By order entered October 10, 2012, this appeal was deemed suitable for submission without oral argument.

Before:  MARKELL, BEESLEY[***] and PAPPAS, Bankruptcy Judges.

**INTRODUCTION**

Gennady and Albina Tikhonov ("Debtors") appeal from a bankruptcy court order granting relief from stay under 11 U.S.C. § 362(d)(1)[1] to the Bank of New York Mellon Trust Co., N.A., formerly known as the Bank of New York Trust ("BONY").  We hold that the appellants lack standing, and thus we DISMISS this appeal.  Even if the appellants had standing, however, we would AFFIRM.

**FACTS**

**A.    The parties, the debt and the encumbered property**

The following facts reflect this Panel's understanding of the key players, the debt incurred and the encumbrances against the relevant parcel of real property:  a single-family residence located in Sherman Oaks, California ("Residence").  For the most part, we have drawn these facts from the various deeds, notes and other transaction documents offered as exhibits by the parties. Neither party has attempted to challenge the authenticity of these documents, or the propriety of our considering them.  While the parties' respective statements of fact focus on different parts of the record, neither effectively has challenged the

---

[***]Hon. Bruce T. Beesley, United States Bankruptcy Judge for the District of Nevada, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

existence or the basic nature of the real estate and lending transactions leading up to their dispute.

On or about April 6, 2006, a man named Leonid Ovsovich ("Ovsovich") owned the Residence. On that date, he borrowed roughly $1 million from Mortgageit, Inc. ("Mortgageit"). In exchange for the loan, Ovsovich executed an Adjustable Rate Note ("Note") and a Deed of Trust ("First Trust Deed"), both dated April 6, 2006.

The First Trust Deed was recorded on April 18, 2006, in the Official Records of Los Angeles County, as instrument number 06-0841080. The First Trust Deed identified Ovsovich as the borrower, Mortgageit as the lender, and Mortgage Electronic Registration Systems, Inc. or "MERS" as the beneficiary, but "solely as nominee for Lender and Lender's successors and assigns." The First Trust Deed elsewhere reiterated that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." Under the First Trust Deed, Ovsovich acknowledged his understanding and agreement, on the one hand, that MERS only held a legal interest to the property described under the First Trust Deed, and on the other hand, that MERS had the right/authority as nominee for the lender and the lender's successors and assigns to exercise all of their rights and interests under the First Trust Deed, to the extent "necessary to comply with law or custom."

On November 2, 2006, Ovsovich borrowed another $25,000 against the Residence, this time from Reliant Group, Inc. ("Reliant"). In exchange for this loan, Ovsovich executed a

3

promissory note and a Deed of Trust ("Second Trust Deed"), both dated November 2, 2006. The Second Trust Deed was recorded on November 9, 2006, in the Official Records of Los Angeles County, as instrument number 06-2491932.

In 2007, Reliant conducted foreclosure proceedings against the residence, which culminated in a trustee's sale held on December 10, 2007, at which the Akselrod Revocable Family Trust ("Akselrod Family Trust") was the successful bidder. That same day, the trustee under the Second Deed of Trust executed a Trustee's Deed Upon Sale conveying the Residence to the Akselrod Family Trust. The Trustee's Deed Upon Sale was recorded on January 10, 2008, in the Official Records of Los Angeles County, as instrument number 20080057975.

In July 2008, one of the Debtors, Albina Tikhonov, purchased the Residence from the Akselrod Family Trust. In furtherance of this sale, the Akselrod Family Trust executed a Grant Deed in favor of Albina Tikhonov, dated July 2, 2008. The Grant Deed was recorded on July 9, 2008, in the Official Records of Los Angeles County, as instrument number 20081215761. In conjunction with this sales transaction, Albina Tikhonov promised to pay the Akselrod Family Trust $100,000 and executed a Deed of Trust ("Third Trust Deed") dated July 15, 2008, to secure her $100,000 debt. The Third Trust Deed was recorded on July 22, 2008, in the Official Records of Los Angeles County, as instrument number 20081303344.

Because the Second Trust Deed was junior to the First Trust Deed, the Akselrod Family Trust and its successor in interest, Albina Tikhonov, took title to the the Residence subject to the

4

First Trust Deed.[2]

**B.     The Debtors' bankruptcy case and BONY's relief from stay motion**

The Debtors filed their chapter 13 bankruptcy case in May 2011, and the bankruptcy court entered an order in October 2011 confirming their second amended chapter 13 plan ("Confirmed Plan").  The Debtors' Confirmed Plan did not provide for any payments to secured creditors.  Moreover, the Confirmed Plan explicitly provided that the Debtors were immediately and unconditionally surrendering the Residence to the Akselrod Family Trust.  As the Confirmed Plan put it:

> The Debtor hereby surrenders the following personal or real property (Identify property and creditor to which it is surrendered.)

| Creditor Name: | Description: |
| --- | --- |
| **The Akselrod Family Trust** | **14713 Valleyheart Dr.** |
| | **Sherman Oaks, CA 91403** |

2nd Amended Chapter 13 Plan (July 11, 2011) at p. 7.

Notwithstanding the Debtors' surrender of their interest in the Residence to the Akselrod Family Trust, BONY filed a motion for relief from stay.  In the motion, BONY: (1) asserted that it was the successor to Mortgageit under the First Trust Deed, and (2) sought relief from the stay to permit BONY to pursue foreclosure proceedings against the Residence.  BONY asserted

---

[2]See 5 Harry D. Miller and Marvin B. Starr, CAL. REAL ESTATE § 11:100 (3d ed. 2009) (stating that the purchaser at a foreclosure sale takes title subject to any senior interests in the foreclosed property, and further stating that "the liens of any trust deeds recorded before the foreclosed security remain on the property after the foreclosure sale, and the title of the purchaser is subject to the payment of their secured obligations when due.")

that it was entitled to relief from stay under § 362(d)(1), for cause, because its interest in the residence was not adequately protected. According to BONY, the Debtors had not made any postpetition payments due on the debt secured by the First Trust Deed, and over $25,000 in accrued postpetition payments had not been made. The notice accompanying the motion warned the Debtors: "If you fail to file a written response to the Motion or fail to appear at the hearing, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief." Notice Of Motion And Motion For Relief From The Automatic Stay (Oct. 25, 2011) at p. 2.

The Debtors did not file an opposition to BONY's relief from stay motion. Instead, the Debtors filed a document entitled: "Debtor's Objection to Claims of the Bank of New York Mellon Trust Company, National Association FKA the Bank of New York Trust Company, N.A. as Successor to JPMorgan Chase Bank N.A. as Trustee." The Debtors also filed a declaration and a memorandum of points and authorities in support of their claim objection (collectively, "Claim Objection Papers").

The Claim Objection Papers are difficult to read at best and incomprehensible at times. Nonetheless, it seems reasonably clear that the Debtors intended the Claim Objection Papers to be linked to BONY's relief from stay motion. While the nature of the intended link is far from clear, the Claim Objection Papers repeatedly reference the relief from stay motion. Moreover, the November 30, 2011 hearing date for the relief from stay motion is listed on the caption page of each of the Claim Objection Papers.

The bankruptcy court held a hearing on the relief from stay

6

motion on November 30, 2011.  Shortly before the hearing, the bankruptcy court issued a tentative ruling in which it indicated that it was inclined to grant the relief from stay motion.  The tentative ruling stated that no opposition had been filed in response to the motion.  The tentative ruling accepted a $900,000 valuation of the Residence based on the Debtors' bankruptcy schedules.  The other facts stated in the tentative ruling appear to have been drawn from BONY's motion.  These facts included: (1) $1,256,638.61 as the amount owed to BONY, (2) the absence of an equity cushion, and (3) Debtors' negative equity in the Residence in the amount of $356,638.61 ($900,000 value, less underlying debt of $1,256,638.61).  The tentative ruling further specified that attendance at the November 30, 2011 relief from stay hearing was required: "APPEARANCE REQUIRED –  RULING MAY BE MODIFIED AT HEARING."  Tentative Ruling (Nov. 29, 2011) at p. 1.

The hearing on the relief from stay motion was brief. BONY's counsel appeared telephonically.  No one appeared on behalf of the Debtors.  After BONY indicated that it was prepared to rest on the bankruptcy court's tentative ruling, the court granted the motion as follows:

> Okay.  There was an objection to your claim filed, which is why I thought there might be a Debtor here, but there isn't, and that was noticed -- I think it came in with no date -- for December 13th.  So your motion is granted, and we'll deal with that other matter [the claim objection] at that time.

Hr'g Tr. (Nov. 30, 2011) at 1:8-14.

The bankruptcy court entered an order granting the relief from stay motion, and the Debtors timely appealed.

While not technically part of the record before the

7

bankruptcy court at the time it ruled on the relief from stay motion, the bankruptcy court's January 4, 2012 order overruling the Debtors' claim objection arguably gives some insight into the court's thought process at the time it ruled on BONY's relief from stay motion.[3]  In the order on the claim objection, the bankruptcy court acknowledged that it was unclear on the face of the Claim Objection Papers whether the Debtors had meant to object to a claim or to oppose BONY's relief from stay motion. The court further acknowledged: (1) that BONY had not filed any proof of claim, and (2) that the November 30 hearing date on the relief from stay motion was referenced in the Claim Objection Papers.

According to the bankruptcy court, notwithstanding the above-referenced facts, in light of the Debtors' failure to appear at the relief from stay hearing, it elected to treat the Claim Objection Papers as an objection to claim, and set a continued hearing on the objection to claim for December 13, 2011.  When the Debtors also failed to appear at the December 13, 2011 hearing on the objection to claim, the court overruled the objection to claim.

The debtors never have attempted to explain their absence from the hearings.  Nor have they argued that the bankruptcy court erred in relying on their failure to appear in making its rulings.  Nor have they denied receipt of adequate notice of all relevant documents and proceedings.

---

[3]Our consideration of this post-appeal order does not alter our analysis or the outcome of this appeal.

8

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Do the Debtors have standing to prosecute this appeal?

2. If the Debtors had standing to appeal, did the bankruptcy court err when it granted BONY's motion for relief from the automatic stay?

**STANDARDS OF REVIEW**

Standing is a legal issue we review de novo. Allen v. U.S. Bank, N.A. (In re Allen), 472 B.R. 559, 565 (9th Cir. BAP 2012) (citing Veal v. Am. Home Mortg. Serv., Inc. (In re Veal), 450 B.R. 897, 906, 918 (9th Cir. BAP 2011)).

We review an order granting relief from stay for abuse of discretion. Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009). Under the abuse of discretion standard, we apply a two-part test. First, we consider de novo whether the bankruptcy court identified the correct law to consider in light of the relief requested. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Second, we review the bankruptcy court's factual findings, and its application of those findings to the relevant law, to determine whether they were either "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577 (1985)).

9

**DISCUSSION**

**A.    The Debtors lack standing to appeal the relief from stay order.**

Even though neither party raised it, we must satisfy ourselves that the Debtors have standing to appeal.  Standing is a threshold issue in all federal cases that must be satisfied before the court can exercise jurisdiction.  In re Veal, 450 B.R. at 906 (citing Warth v. Seldin, 422 U.S. 490, 498 (1975)).  Article III of the Constitution requires litigants to demonstrate their standing by showing: injury in fact, causation, and redressability.  Id.

We do not doubt here the existence of Article III standing.  The order on appeal granted BONY relief from the automatic stay, which in turn permitted BONY to pursue foreclosure proceedings against property listed on the Debtor's bankruptcy schedules as property of their bankruptcy estate.  In addition, if we were to reverse, that reversal would redress any harm allegedly caused by the order granting relief from the stay.

However, in addition to Article III standing, there are a number of prudential limitations on federal court jurisdiction.  Whereas Article III standing focuses on whether the court has jurisdiction, prudential standing doctrine focuses on whether the court should exercise that jurisdiction.  See Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 289 (2008) (stating that prudential standing embodies judicially self-imposed limits on the exercise of jurisdiction).

Two aspects of prudential standing doctrine are implicated by the facts of this case.  First, federal courts ordinarily

10

decline to exercise jurisdiction when a party seeks to vindicate rights belonging to others, rather than their own legal rights. See Warth, 422 U.S. at 509; In re Veal, 450 B.R. at 906-07. This aspect of prudential standing is commonly referred to as third party standing. See id. Second, federal appellate courts typically decline to exercise jurisdiction over appeals originating from bankruptcy cases unless the appellant is a "person aggrieved" – that is, a person who has been "'directly and adversely pecuniarily affected'" by the order on appeal. See Sherman v. SEC (In re Sherman), 491 F.3d 948, 957 n.8 (9th Cir. 2007) (quoting Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983)). The Ninth Circuit has referred to this doctrine as the "prudential appellate standing" doctrine. Id. We address each of these prudential standing doctrines in turn below.

**1.  The Debtors lack third party standing.**

As indicated above, under the third party standing doctrine, litigants generally must assert their own legal rights and not the rights of others. See Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. at 289-90. The problem here with respect to the Debtors' third party standing arises from their Confirmed Plan. The Confirmed Plan's terms are binding on the Debtors, as well as their creditors. § 1327; Enewally v. Wash. Mut. Bank (In re Enewally), 368 F.3d 1165, 1172 (9th Cir. 2004); see also United Student Aid Funds, Inc. v. Espinosa, --- U.S. ---, 130 S.Ct. 1367, 1376 (2010).

The Debtors' Confirmed Plan provides for the Debtors' immediate and unconditional surrender of their interest in the

11

Residence to the Akselrod Family Trust. As a result of that surrender, the Debtors do not appear to have retained any interest in the Residence.[4] Consequently, the only party potentially impacted by BONY's obtaining relief from stay with respect to the Residence was the Akselrod Family Trust. Thus, the Debtors impermissibly were seeking to enforce the rights of the Akselrod Family Trust, rather than their own rights. See York Int'l Bldg., Inc. v. Chaney (In re York Int'l Bldg., Inc.), 527 F.2d 1061, 1067 (9th Cir. 1975) (applying third party standing doctrine where the debtor and its sole shareholder sought to enforce rights belonging to their creditors).

The Debtors' Confirmed Plan remains in full force and effect. They have not sought to revoke or amend their Confirmed Plan. Accordingly, the Debtors lack third party standing to enforce any rights the Akselrod Family Trust may hold with respect to the Residence.

**2. The Debtors lack prudential appellate standing.**

As set forth above, an appellant only has prudential

_____

[4]This surrender also arguably rendered BONY's relief from stay proceedings moot because the Residence no longer would have qualified as property of the debtor's bankruptcy estate. See §§ 362(c)(1); 541(a)(1). Nonetheless, we decline to decide this appeal on that basis. Creditors often find it necessary to obtain "comfort orders" before they effectively can proceed against property that used to be estate property. To deny relief from stay on mootness grounds in these situations would deprive the creditors of any certainty as to the status of the debtors' property and former property, exposing them to the risk of contempt proceedings should they wrongly interpret the status of that property. Furthermore, third parties on whom the creditor may rely to facilitate the enforcement of their rights against such property sometimes refuse to act unless the creditor first obtains a comfort order.

12

appellate standing if it is a person aggrieved, and an appellant only qualifies as a person aggrieved if it has been directly and adversely affected pecuniarily by the order on appeal. But there are two additional requirements to qualify as a person aggrieved. Provided that the appellant had adequate notice of the bankruptcy court proceedings, the appellant is not a person aggrieved unless he or she: (1) objected to the request for relief leading to the order appealed, and (2) appeared at the hearing on the requested relief. See Brady v. Andrew (In re Commercial W. Fin. Corp.), 761 F.2d 1329, 1335 (9th Cir. 1985); see also Weston v. Mann (In re Weston), 18 F.3d 860, 864 (10th Cir. 1994) (creditors lacked standing to appeal bankruptcy court's order resolving trustee election because they did not participate in resolution of disputed election). These two elements of the person aggrieved test are founded on "the need for economy and efficiency in the bankruptcy system." In re Ray, 597 F.3d 871, 874 (7th Cir. 2010) (citing In re Commercial W. Fin. Corp., 761 F.2d at 1335).

Furthermore, the requirements of attendance at and objection in the bankruptcy court proceedings ensures that "the bankruptcy court is made aware of all available evidence and objections when making its determination . . . and prevent[s] a party in interest from 'lying in the weeds' during bankruptcy court proceedings . . . only to appeal and generate additional unnecessary proceedings." White v. Virginia (In re Urban Broad. Corp.), 304 B.R. 263, 272 (E.D. Va. 2004) aff'd on other grounds, 401 F.3d 236, 244 (4th Cir. 2005) (non-participation is an issue of waiver not standing).

13

Here, the Debtors have failed to satisfy two of the prudential appellate standing requirements. For the same reasons that we held above that the Debtors' lacked third party standing, the Debtors also cannot show that they have been directly and adversely affected pecuniarily by the order on appeal. Pursuant to the Confirmed Plan's terms, the Debtors no longer have any interest in the Residence. Consequently, the relief from stay order permitting BONY to foreclose on the Residence could not have affected the Debtors in any meaningful way.

Moreover, all of the types of harm associated with non-appearance alluded to in Urban Broad. Corp., above, occurred here. The Debtors' failure to appear at the hearing and explain their intentions with respect to their difficult-to-understand Claim Objection Papers left the bankruptcy court in the unenviable position of attempting to ascertain from the face of those papers what the Debtors had intended without their participation and assistance. In addition, their failure to appear directly resulted in the bankruptcy court not addressing their Claim Objection Papers in the context of the relief from stay proceedings, which in turn has spawned the current appeal, as well as the potential for post-appeal proceedings.

In sum, given that we cannot ascertain any impact on the Debtors arising from the relief from stay order, and given their failure to attend the relief from stay hearing, we hold that the Debtors lacked prudential appellate standing.

**B. Even if the Debtors had standing, the bankruptcy court did not abuse its discretion in granting relief from stay.**

In addressing the issues raised by the Debtors' pro se

14

appeal brief, we are cognizant of our duty to interpret their brief liberally and to ensure that their substantive contentions are not deemed waived simply as a result of their failure to comply with mere technical procedural requirements or their inability to state their contentions using formal legal terminology.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Nonetheless, having carefully reviewed their appeal brief, we are convinced that their various arguments challenging the order on appeal all boil down to a single relevant assertion: that BONY lacked standing as the "real party in interest" under Civil Rule 17(a)(1) to seek relief from stay in their bankruptcy case.  The Debtors have advanced numerous theories why BONY lacked standing.  Some of their theories are plausible while others are patently meritless or incomprehensible.  However, their critical theories attacked BONY's contention that it is the holder of the Note and hence had standing as the party entitled to enforce the Note under governing commercial law statutes.[5] According to the Debtors, BONY is not the party entitled to enforce the note and consequently lacked standing.  But we

_____

[5]The parties to this appeal seem to agree that California law should be applied to resolve their dispute.  Given that the Note is silent, that the Debtors reside in California and that Osovich executed the Note and the First Trust Deed in California, we agree.  See Cal. Com. Code § 1301(b); see also Barclays Discount Bank Ltd. v. Levy, 743 F.2d 722, 724–25 (9th Cir. 1984). Nonetheless, for ease of reference, we will cite the Uniform Commercial Code ("UCC") in support of our commercial law analysis.  Unless otherwise noted, the relevant provisions of California's version of the UCC do not materially diverge from their UCC cognates.

15

disagree with the Debtors. For purposes of BONY's relief from stay motion, BONY sufficiently established its standing as the party entitled to enforce the Note by presenting to the bankruptcy court a copy of the Note and an allonge, which together contained an unbroken chain of special indorsements; the last indorsement in this chain named BONY as payee. We explain immediately below why the Note and the allonge are sufficient to resolve this standing issue in BONY's favor.[6]

As a preliminary matter, we note the limited scope of stay relief proceedings. Such proceedings are summary in nature and limited to determining whether there are "sufficient countervailing equities to release an individual creditor from the collective stay." In re Veal, 450 B.R. at 914. Thus, a relief from stay proceeding is not an appropriate vehicle for finally and definitively determining a creditor's claim or security. Id.; see also Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985) ("Hearings on relief from the automatic stay are thus handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing." (citations omitted)).

Because stay relief is limited in nature, is subject to an

---

[6]Arguably, the Debtors did not adequately present their standing argument in the bankruptcy court because they did not file an explicit objection to BONY's relief from stay motion and because they did not appear for the relief from stay hearing. Nonetheless, we will exercise our discretion to examine the Debtors' standing argument. See City of Los Angeles v. County of Kern, 581 F.3d 841, 846 (9th Cir. 2009) (holding that appellate court may consider, but was not required to consider, unpreserved prudential-standing argument).

16

expedited hearing process, see § 362(e), and does not finally adjudicate the parties' rights and liabilities, a party seeking stay relief only needs to establish that it has a "colorable claim" against property of the estate. Veal, 450 B.R. at 914-15 (citing United States v. Gould (In re Gould), 401 B.R. 415, 425 n.14 (9th Cir. BAP 2009); Biggs v. Stovin (In re Luz Int'l, Ltd.), 219 B.R. 837, 842 (9th Cir. BAP 1998); Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 32 (1st Cir. 1994)).

At its heart, the Debtors' standing argument questions BONY's third party standing. As we explained above, in order to establish third party standing, BONY needed to establish that it was asserting its own legal rights and not the rights of others. See Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. at 289-90.

Under § 362(d), any "party in interest" can request relief from the automatic stay. But the term "party in interest" is not defined in the Bankruptcy Code. Whether a moving party qualifies as a party in interest under § 362(d) is determined on a case-by-case basis, taking into account the movant's claimed interest and the alleged impact of the stay on that interest. In re Kronemyer, 405 B.R. at 919. A "party in interest" includes any party that has "an actual pecuniary interest" in the matter or "a practical stake" in its outcome. Brown v. Sobczak (In re Sobczak), 369 B.R. 512, 517-18 (9th Cir. BAP 2007).

As indicated in Veal, a creditor can establish that it is a "party in interest" with standing to seek relief from stay by showing that it is a person entitled to enforce the note, or that it holds some ownership or other interest in the note amounting to a colorable claim. Id. at 917 (citing In re Hwang, 438 B.R.

17

661, 665 (C.D. Cal. 2010)).

In relevant part, a party is a person entitled to enforce the note if it is a "holder" of the note, as defined in UCC § 1-201(b)(21)(A). In re Veal, 450 B.R. at 910-11. A "holder" includes a "person in possession of a negotiable instrument that is payable . . . to an identified person that is the person in possession." UCC § 1-201(b)(21)(A); see also In re Veal, 450 B.R. at 911. In turn, a negotiable instrument has been made payable to an identified person when it contains a "special indorsement" specifying that the instrument is payable to that identified person. See UCC § 3-205(a).

Here, the face of the Note reflects that Mortgageit, the original payee under the Note, indorsed it by making it payable to an entity called Residential Funding Corp. ("RFC").[7] In turn, RFC specially indorsed the Note by making it payable to JP Morgan Chase Bank, as Trustee ("Chase").[8] Finally, on the face of the allonge, BONY as Chase's successor essentially specially indorsed

[7]BONY has claimed that Mortgageit endorsed the Note in blank. Even if that is true, it appears from the indorsements on the face of the Note that RFC converted Mortgageit's indorsement into a special indorsement. See UCC § 3-205(c) ("The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable.")

[8]UCC § 3-110(c)(2)(i) provides in relevant part that, for purposes of determining who is the holder of an instrument, an instrument that is payable to a person described as a trustee is payable to that trustee, regardless of whether the beneficiary of the trust is named.

18

the Note to itself.[9]

Importantly, we have not been able to locate anything in the Debtors' Claim Objection Papers or in their brief on appeal suggesting in any way that they challenged the effectiveness of any of these indorsements or the validity of the allonge.[10] Nor did they dispute that BONY was Chase's successor. Indeed, all of Debtors' papers repeatedly referred to BONY as Chase's successor. BONY attached to its relief from stay motion the declaration of John Castagna ("Castagna"), who declared that he was an employee of BONY's servicing agent GMAC Mortgage, LLC, and a custodian of records for BONY pertaining to documents concerning the loan transaction from which the Note and the First Trust Deed originated. Castagna further declared that BONY was the current holder of the Note, and he attached to his declaration as exhibits a copy of the Note and the accompanying allonge in support of this contention.[11] Under the particular circumstances

[9]See UCC § 3-204(d) ("If an instrument is payable to a holder under a name that is not the name of the holder, indorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.")

[10]At pages 28 through 30 of their opening appeal brief, the Debtors do discuss the requirements for indorsement of negotiable instruments, citing California's versions of UCC §§ 3-201, 3-203 and 3-204. But they never claim there or elsewhere in their brief that there was anything wrong with the Mortgageit indorsement, the RFC indorsement or the Chase indorsement. Instead, in an inexplicable non sequitur, they claim that the allegedly fraudulent conduct of Executive Trustee Services prevented any proper negotiation of the Note.

[11]The Debtors did not raise any question, let alone a
(continued...)

19

of this matter as described above, Castagna's declaration and the attached exhibits were sufficient to establish BONY's status as the current holder of the Note, as the person entitled to enforce the Note, and as a party with standing to seek relief from stay.[12]

We once again acknowledge the duty that all federal courts have "to ensure that pro se litigants do not lose their right to

---

[11](...continued) genuine question, regarding the authenticity of the original Note BONY claimed to hold. Nor did they assert any evidentiary objection based on Fed. R. Evid. 1002 to the copy of the Note attached as an exhibit to Castagna's declaration. Accordingly, BONY was not required to produce in court the original Note in order to substantiate their status as a holder of the Note for purposes of the relief from stay proceedings. At pages 26 and 27 of their appeal brief, the Debtors did complain about a promissory note, but it is reasonably clear that Debtors were not complaining about BONY's Note – the Note securing the First Trust Deed. Rather, it appears that they were complaining about the promissory note that Albina Tikhonov executed and made payable to the Akselrod Family Trust, which was secured by the Third Trust Deed.

[12]Because we have concluded that BONY had standing as the holder of the Note, we need not determine whether BONY also held the beneficial interest in the First Trust Deed. In any event, the beneficial interest in a deed of trust follows the note. See Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security."); Cockerell v. Title Ins. & Trust Co., 42 Cal. 2d 284, 291, 267 P.2d 16, 20 (Cal. 1954) ("Assuming for the moment that the assignment of the note, secured by the third trust deed, was a valid assignment, no further assignment of the deed of trust was necessary."); see also Carpenter v. Longan, 83 U.S. 271, 275 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."); UCC § 9-203(g) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien.")

20

a hearing on the merits of their claim [or defense] due to ignorance of technical procedural requirements." Balistreri, 901 F.2d at 699. Nonetheless, this duty has its limits. Neither this Panel nor the bankruptcy court are required to ferret out and substantiate arguments on behalf of pro se parties when the parties make no attempt to assert these arguments. See DeBuono v. Fanelli (In re Fanelli), 263 B.R. 50, 62 (Bankr. N.D.N.Y. 2001). In other words, the requirement of stating a valid, comprehensible claim or defense is not a "technical procedural requirement" that a pro se party can be excused from. See Victery v. Arizona, 2011 WL 2940763, at *4 (D. Ariz. 2011). Here, the Debtors simply did not make any challenge to the authenticity of the Note or the accompanying allonge. Nor did they challenge the indorsements on either of these documents. Consequently, the presentation of evidence that BONY made in conjunction with its relief from stay motion was sufficient to establish its standing to seek relief from stay.

**CONCLUSION**

For all of the reasons set forth above, we hold that the appellants lack standing, and thus we DISMISS this appeal. Even if the appellants had standing, however, we would AFFIRM.

21