In re David E. KRONEMYER, Debtor.

David E. Kronemyer, Appellant,

v.

American Contractors Indemnity Co., Appellee.

BAP No. 08–1343–DMkPa
Bankruptcy No. LA 07–10159 ER.

United States Bankruptcy
Appellate Panel
of the Ninth Circuit.

Argued and Submitted on May 14, 2009.

Filed May 27, 2009.

---

David E. Kronemyer, Beverly Hills, CA, pro se.

Misty Ann Perry–Isaacson, Pagter and Miller, Santa Ana, CA, for American Contractors Indemnity Co.

Before: DUNN, MARKELL and PAPPAS, Bankruptcy Judges.

DUNN, Bankruptcy Judge.

The bankruptcy court granted relief from the automatic stay to allow an objection to the debtor's final accounting and a related surcharge request in a state court guardianship proceeding to go forward. The debtor appealed, asserting that the movant, a surety with a contingent claim against the debtor, lacked standing to bring the motion, particularly where the beneficiary of the suretyship failed to file a proof of claim in the bankruptcy case. We AFFIRM.[1]

## I. FACTS

Appellant, David E. Kronemyer, was the court-appointed guardian of the Estate of Yvonne Leal ("Leal Estate") between 1993 and November 18, 2003, the date Yvonne Leal reached the age of 18.[2] Appellee, American Contractors Indemnity Company ("ACIC"), issued two fiduciary bonds to Mr. Kronemyer in his capacity as guardian of the Leal Estate.

When the guardianship terminated, the State Court appointed a professional fiduciary conservator ("Conservator") for the Leal Estate. Mr. Kronemyer filed his Sixth and Final Account and Report ("Final Account") with respect to the guardianship on May 19, 2004. The Conservator filed objections to the Final Account on March 25, 2005, including a request that Mr. Kronemyer be surcharged ("Surcharge Request").

In addition to making the Surcharge Request, the Conservator filed a criminal complaint ("Criminal Proceeding") against Mr. Kronemyer with the San Diego County District Attorney. On June 25, 2007, Mr. Kronemyer pleaded guilty to one count of violating Cal.Penal Code § 506.[3]

---

1. Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101–1532.

2. San Diego Superior Court ("State Court"), Case No. P158102.

3. Among other things, Cal.Penal Code § 506 deals with fiduciary embezzlements.

A $10,000 restitution judgment ("Criminal Court Judgment") was entered against Mr. Kronemyer in the Criminal Proceeding on February 11, 2008. Mr. Kronemyer paid the restitution obligation. He asserts that the Criminal Court Judgment, the terms of which were approved by the Leal Estate, resolved all disputes between the parties, including any claims involved in the Surcharge Request.

Mr. Kronemyer filed a voluntary chapter 11 petition on January 8, 2007. On May 18, 2007, he filed an amended Schedule F, adding the Leal Estate as a creditor, with a disputed claim of $23,043. The bankruptcy case was converted to chapter 7 on his motion on May 16, 2008.

The Leal Estate did not file a proof of claim in the bankruptcy case.[4] However, ACIC did file a proof of claim based on its potential liability to the Leal Estate as Mr. Kronemyer's surety. ACIC also filed an adversary proceeding ("Adversary Proceeding") seeking a determination that whatever amount it might ultimately be obligated to pay on Mr. Kronemyer's behalf under the bonds it had issued in the guardianship proceeding would be excepted from Mr. Kronemyer's discharge under § 523(a)(4). In response to a question at oral argument, Mr. Kronemyer advised the Panel that the Leal Estate had been joined as a party plaintiff in the Adversary Proceeding.

ACIC filed a motion for relief from the automatic stay ("Motion"), seeking authority for ACIC and the Conservator to proceed in the State Court to final judgment on the Surcharge Request. The Conservator later joined in the Motion.

Mr. Kronemyer opposed the Motion on multiple grounds. First, he asserted that the Criminal Court Judgment not only resolved the Surcharge Request, it barred any further action against him by the Leal Estate. Second, Mr. Kronemyer asserted that because ACIC, a subrogated surety, holds no claim against him, ACIC had no standing to bring the Motion. Finally, Mr. Kronemyer asserted that even if ACIC had standing, ACIC could not demonstrate cause for relief from the automatic stay.

The bankruptcy court held that ACIC, as a creditor holding a contingent claim, was a party in interest and therefore had standing to bring the Motion. The bankruptcy court determined that "cause" existed to grant the Motion because resolution of the Surcharge Request in the State Court would serve to liquidate, in the forum more familiar with the dispute among the parties, ACIC's contingent claim in the bankruptcy case. Further, the bankruptcy court concluded that the preclusive effect of the Criminal Court Judgment on the Surcharge Request could be resolved more expeditiously by the State Court.

Mr. Kronemyer timely appealed the order granting ACIC relief from the automatic stay.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Whether the bankruptcy court erred when it determined that ACIC had standing to file and prosecute the Motion.

Whether the bankruptcy court abused its discretion when it granted ACIC relief from the automatic stay.

---

4. The deadline for filing proofs of claim in the chapter 7 case was September 30, 2008. *See* Docket No. 56. The chapter 7 trustee filed a "no asset" report on January 21, 2009. *See* Docket No. 85.

Whether the bankruptcy court erred when it included "ancillary" provisions in the order granting relief from the automatic stay.

## IV. STANDARDS OF REVIEW

■ Standing is a legal issue that we review de novo. *Loyd v. Paine Webber, Inc.*, 208 F.3d 755, 758 (9th Cir.2000); *Aheong v. Mellon Mtge. Co. (In re Aheong)*, 276 B.R. 233, 238 (9th Cir. BAP2002).

■ We review de novo contentions that present an issue of law regarding stay relief. *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108 (9th Cir.1995). The decision of a bankruptcy court to grant relief from the automatic stay under § 362(d) is reviewed for abuse of discretion. *Id.*; *First Fed. Bank v. Robbins (In re Robbins)*, 310 B.R. 626, 629 (9th Cir. BAP2004).

## V. DISCUSSION

### A. *ACIC Had Standing to File and Prosecute the Motion*

Mr. Kronemyer asserts that the bankruptcy court erred in granting the Motion because ACIC had no standing to file and prosecute the Motion.

■ Section 362(d) authorizes the bankruptcy court to grant relief from the automatic stay "[o]n request of a party in interest." The issue before us, therefore, is whether ACIC is a "party in interest" in Mr. Kronemyer's bankruptcy case. The term "party in interest" is not defined in the Bankruptcy Code. Status as "a party in interest" under § 362(d) "must be determined on a case-by-case basis, with reference to the interest asserted and how

[that] interest is affected by the automatic stay." *In re Woodberry*, 383 B.R. 373, 378 (Bankr.D.S.C.2008) (internal quotation marks and citation omitted).

As noted by the bankruptcy court, the Bankruptcy Code defines "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." § 101(10). The Bankruptcy Code further defines "claim" as a "right to payment, *whether or not such right is ... contingent ....*" § 101(5) (emphasis added).

While Mr. Kronemyer effectively concedes that ACIC has a contingent claim under this analysis, he argues that holding such a contingent claim, under the facts of this case, does not confer standing on ACIC. Mr. Kronemyer asserts that because ACIC is a surety with a contingent claim on the petition date, § 502(e)(1) mandates that the proof of claim ACIC filed in the case be disallowed. Section 502(e)(1) provides:

> Notwithstanding subsections (a), (b) and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> . . .
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution. . . .

In Mr. Kronemyer's view, because the claim must be disallowed under § 502(e)(1), and indeed had been disallowed by the time of oral argument of this appeal,[5] ACIC cannot be said to hold a

---

**5.** The bankruptcy court disallowed ACIC's contingent claim by order entered on March 11, 2009.

claim, and therefore cannot be a creditor for purposes of the Bankruptcy Code in general, and § 362(d) in particular.

■ Mr. Kronemyer appears to mistake the disallowance of a claim with the existence and, using his term, "viability," of a claim. Many rights under the Bankruptcy Code are keyed to "allowed" claims. In fact, allowability of claims is a bankruptcy concept. For instance, only holders of allowed claims may receive distributions from the bankruptcy estate in chapter 7 cases. *See* § 726(a). Whether a claim is to be *allowed or disallowed* is determined by the provisions of § 502, whereas the *existence* of a claim is controlled by state or other federal law.[6] Disallowance of ACIC's claim means that ACIC is not entitled to any distribution from Mr. Kronemyer's bankruptcy estate, but determining whether ACIC's claim is valid is crucial to deciding if it should be excepted from Mr. Kronemyer's discharge in the Adversary Proceeding.

■ Mr. Kronemyer also asserts that because § 502(e)(1) requires ACIC's claim to be disallowed if contingent, any liability he might have to ACIC must be fixed prior to the petition date or ACIC never can have any claim against him. However, the mere fact that rights are fixed as of the petition date does not mean that a claim cannot be liquidated thereafter. As noted by the bankruptcy court, § 502(e)(2) provides that a "claim for reimbursement or contribution ... that becomes fixed after the commencement of the case shall be determined, and shall be allowed ... or disallowed ... the same as if such claim had become fixed before the date of the filing of the petition."

As a secondary argument, Mr. Kronemyer asserts that ACIC can never have more than a contingent claim, because (1) the Leal Estate did not file a proof of claim in his bankruptcy case, and (2) ACIC's claim is derivative of any claim of the Leal Estate.

■ Under California law, "[a] suretyship obligation is deemed unconditional unless its terms import some condition precedent to the liability of the surety." Cal. Civ.Code § 2806. Further, Cal. Civ.Code § 2807 provides: "A surety who has assumed liability for payment or performance is liable to the creditor immediately upon the default of the principal, and without demand or notice." Thus, the Leal Estate need never seek recovery from Mr. Kronemyer, but may instead look directly to ACIC to satisfy any surcharge that is ordered in the guardianship proceeding.

■ Under Cal. Civ.Code § 2847, ACIC has a direct claim against Mr. Kronemyer for reimbursement of any amount ultimately paid on its bonds.[7] Consequently, whether the Leal Estate filed a proof of claim in the bankruptcy case is not relevant to the issue of whether ACIC as a party in interest had standing to bring the Motion.

---

6. Section 501(b) expressly authorized ACIC to file a claim when the Leal Estate did not. "The rationale ... is to ensure that some or all of the debt for which the [surety] is liable is paid through distributions in the bankruptcy case." 4 Collier on Bankruptcy ¶ 501.03[1], at p. 501–17 (15th ed. rev.2009). On the other hand, disallowance of the claim of a surety serves the purpose of ensuring that distribution of estate assets is not made both to the primary creditor and to the surety. 4

Collier on Bankruptcy ¶ 502. 06[d], at pp. 502–62–502–63 (15th ed. rev.2009).

7. Cal. Civ.Code § 2847 provides: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses ...."

Further, we observe that the chapter 7 trustee filed a "No Asset" report on January 21, 2009. *See* Docket No. 85. "In no-asset chapter 7 liquidation cases, the filing of a proof of claim serves no practical purpose since there will be no distribution from the estate in which to participate." 4 COLLIER ON BANKRUPTCY ¶ 501.01[3][b], at p. 501–6 (15th ed. rev.2009).

■ The bankruptcy court properly concluded that because ACIC possessed a claim to payment against Mr. Kronemyer, even though that claim was contingent both as of the petition date and as of the date of the Motion, ACIC is a creditor within the meaning of the Bankruptcy Code. As a creditor, ACIC had standing as a party in interest to bring the Motion. *See, e.g., Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.),* 698 F.2d 571, 573–74 (2d Cir.1983) (taking the narrow view that *only* creditors have standing to bring a motion for relief from the automatic stay); *In re B & I Realty Co.,* 158 B.R. 220, 222–23 (Bankr.W.D.Wash.1993); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 175, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6136 ("*Creditors* may obtain relief from the stay if their interests would be harmed by continuance of the stay.") (emphasis added).

### B. The Bankruptcy Court Did Not Abuse Its Discretion When It Granted Relief From the Automatic Stay

■ What constitutes "cause" for granting relief from the automatic stay is decided on a case-by-case basis. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir.1990); *see also Piombo Corp. v. Castlerock Props. (In re Castlerock Props.),* 781 F.2d 159, 163 (9th Cir.1986).

■ Among factors appropriate to consider in determining whether relief from the automatic stay should be granted to allow state court proceedings to continue are considerations of judicial economy and the expertise of the state court, *see MacDonald v. MacDonald (In re MacDonald),* 755 F.2d 715, 717 (9th Cir.1985), as well as prejudice to the parties and whether exclusively bankruptcy issues are involved, *see Ozai v. Tabuena (In re Ozai),* 34 B.R. 764, 766 (9th Cir.BAP1983).

As advocated by Mr. Kronemyer, the bankruptcy court applied factors (the "*Curtis* Factors") articulated in *In re Curtis,* 40 B.R. 795, 799–800 (Bankr.D.Utah 1984), and adopted more recently by the bankruptcy court in *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.),* 311 B.R. 551, 559–60 (Bankr.C.D.Cal.2004). We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.

The bankruptcy court determined that the Surcharge Request constituted an existing proceeding for purposes of the Motion despite the fact that it had not been initiated by ACIC. ACIC asserted in its motion that as a surety, it had the right to participate in the Surcharge Request proceeding. We agree. ACIC has a substantial interest, as a surety whose contingent claim is being liquidated, in the Surcharge Request proceeding. It is ACIC that will have initial liability to the Leal Estate for any surcharge ordered against Mr. Kronemyer in the State Court. It is disingenuous to suggest otherwise.

Additionally, although stayed by an order of this Panel, the Surcharge Request was ready for prompt determination in the State Court. Thus, judicial economy weighs in favor of allowing the Surcharge Request to proceed in the State Court. Further, the Surcharge Request is unique

to the guardianship proceeding, and thus squarely within the expertise of the State Court.

The bankruptcy court further determined that resolution of the Surcharge Request would assist the bankruptcy court in determining whether ACIC has a claim against Mr. Kronemyer. Despite the fact that ACIC's claim has since been disallowed under § 502(e)(1), resolution of the Surcharge Request remains important to determining ACIC's rights in the bankruptcy context both pursuant to § 502(e)(2), and with respect to the pending Adversary Proceeding ACIC brought for a determination that its claim is excepted from Mr. Kronemyer's discharge.

Finally, the bankruptcy court considered and rejected Mr. Kronemyer's assertion that the Motion should be denied because the Criminal Court Judgment was preclusive as to the Surcharge Request. As noted by the bankruptcy court, Mr. Kronemyer remains free to raise preclusion defensively in the State Court with respect to the Surcharge Request. Since Mr. Kronemyer's preclusion argument raises issues that must be resolved under California state law, we conclude that the bankruptcy court did not abuse its discretion in deferring to the state court to determine the preclusive effect, if any, of the Criminal Court Judgment with respect to the Surcharge Request. *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 826 (9th Cir. 2002) ("In determining whether a party should be estopped from relitigating an issue decided in a prior state court action, the bankruptcy court must look to that state's law of collateral estoppel.") (citation omitted).

The bankruptcy court did not abuse its discretion in granting the Motion to allow the Surcharge Request to proceed before the State Court.

## C. *The Bankruptcy Court Did Not Err by Including "Ancillary" Provisions in the Order*

Mr. Kronemyer asserts that the bankruptcy court had no legal authority to include two "ancillary" provisions, not requested in the Motion, in its Order.

■ One provision states that the Order "shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code." This provision specifically was requested in the Motion. Thus, Mr. Kronemyer's argument that this provision violated his due process rights is not well taken. Further, the provision only articulates existing law. Once the automatic stay has been lifted, it is not "reimposed" if the bankruptcy case subsequently is converted to another chapter. *See, e.g., British Aviation Ins. Co. v. Menut (In re State Airlines, Inc.)*, 873 F.2d 264, 268–69 (11th Cir.1989); *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr.E.D.Cal. 1993).

The other provision states that ACIC "is permitted to enforce its final judgment only by proceeding against [Mr. Kronemyer] as to non-estate property or earnings." Mr. Kronemyer contends that this language is tantamount to a determination that any final judgment will be nondischargeable. We disagree. The discharge order entered in the bankruptcy case will determine the scope of Mr. Kronemyer's discharge, subject to any determination by the bankruptcy court in the Adversary Proceeding. The subject provision only makes clear that ACIC cannot enforce any final judgment against assets of Mr. Kronemyer's bankruptcy estate. Since the chapter 7 trustee subsequently filed a "no asset" report, arguably there are no nonexempt estate assets, and this issue is moot.

We find no error in the form of the bankruptcy court's order granting the Motion.

## VI. CONCLUSION

The bankruptcy court did not err when it determined that ACIC had standing to bring the Motion. Nor did the bankruptcy court abuse its discretion in granting the Motion. Accordingly, We AFFIRM.