**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-17-1277-KuLS |
| | ) | |
| MURRAY ALTMAN, | ) | Bk. No. 6:16-BK-15248-MW |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| YUN HEI SHIN, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | M E M O R A N D U M* |
| | ) | |
| MURRAY ALTMAN, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on May 24, 2018 at
Pasadena, California

Filed - June 26, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding
_____

Appearances:    Kathleen P. March of The Bankruptcy Law Firm,
P.C. argued for appellant Yun Hei Shin; Andrew S.
Bisom of Bisom Law Group argued for appellee
Murray Altman.
_____

Before:   KURTZ, LAFFERTY, and SPRAKER, Bankruptcy Judges.

_____

     * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

## I. INTRODUCTION

Appellant-creditor, Yun Hei Shin aka Angie Shin (Ms. Shin), held a 25% economic interest in Desert Springs Financial, LLC (DSF), a California limited liability company. Appellee-debtor, Murray Altman (Mr. Altman), held the remaining 75% economic interest and had the sole right to manage DSF under its operating agreement. Ms. Shin obtained a state court judgment against Mr. Altman for breach of fiduciary duty related to his mismanagement of DSF.

Mr. Altman later sought bankruptcy protection under chapter 11.[1] Ms. Shin filed a motion seeking a determination that the automatic stay did not apply to her proposed state court action for the appointment of a receiver to take control of DSF, or in the alternative, Ms. Shin requested relief from the automatic stay for cause to proceed with the action under § 362(d)(1) due to Mr. Altman's alleged mismanagement of DSF.

The bankruptcy court found that Mr. Altman's sole right to manage DSF was property of his bankruptcy estate protected by the automatic stay. The court denied Ms. Shin's request for relief from the automatic stay to proceed with the state court action with prejudice, deciding that the appointment of a receiver would interfere with the administration of Mr. Altman's estate and his efforts to reorganize. This appeal followed. For the reasons explained below, we AFFIRM.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and Rule references are to the Federal Rules of Bankruptcy Procedure.

## II. FACTS

**A. Desert Springs Financial, LLC**

DSF is a limited liability company formed under California law in January 1999, and is in the business of owning and operating real estate. Former members of DSF transferred their interests to Ms. Shin in July 2009 whereby she acquired a 25% economic interest in DSF but no voting or other rights of any kind. Mr. Altman holds the remaining 75% economic interest in DSF and a 100% membership interest.

The Amended and Restated Operating Agreement for DSF dated October 1, 2009 (Operating Agreement) defines an "Economic Interest" as:

> [A] Member's or Economic Interest Owner's share of one or more of the Company's Net Profits, Net Losses, and Distributions of the Company's assets. . ., but shall not include any other rights, preferences or privileges of a Member . . . including, without limitation, the right to vote or participate in the management of the Company. . . .

"Membership Interest" is defined as:

> [A] Member's entire interest in the Company including the Member's Economic Interest, the right to vote or participate in the management, and the right to receive information concerning the business and affairs, of the Company.

The Operating Agreement shows that Mr. Altman had complete and exclusive authority to manage and control DSF's business, property and affairs.

Mr. Altman and Ms. Shin have been embroiled in a number of disputes concerning DSF's business affairs. In July 2013, Ms. Shin sued Mr. Altman in the California Superior Court for, among other things, breach of fiduciary duty in connection with his management of DSF. In December 2015, after a multi-phase

-3-

trial, the California Superior Court entered judgment in favor of Ms. Shin and against Mr. Altman on her breach of fiduciary duty cause of action. The state court ordered Mr. Altman to pay Ms. Shin damages and attorneys' fees in the amount of $542,118.00 and was also required to repay DSF approximately $1.44 million.

DSF filed a voluntary chapter 11 petition on May 30, 2016. Less than a year later, the case was dismissed.

**B.   Bankruptcy Events**

Mr. Altman filed a voluntary chapter 11 petition on June 12, 2016. In his schedules, Mr. Altman listed his 75% ownership interest in DSF with a value of $2,895,000 and showed his occupation as manager of DSF. He listed Ms. Shin as a judgment creditor owed $542,118.00. Mr. Altman also listed Ramon Palm Lane, Inc., a company owned by Ms. Shin, as a judgment creditor owed $280,824.00.

In June 2017, Ms. Shin filed a motion seeking an order that the automatic stay did not apply to her proposed state court action for the appointment of a receiver to run DSF, or in the alternative, requesting relief from the automatic stay for cause under § 362(d)(1) due to Mr. Altman's alleged mismanagement of DSF (Motion). Ms. Shin alleged that DSF held at least $788,000 in cash generated from the sale of real property. Ms. Shin wanted a receiver appointed to take control of the cash and prevent Mr. Altman from misapplying the funds. Or, if the cash had been misapplied, the receiver could seek to get it back for DSF.

The Motion was scheduled for a hearing on July 25, 2017.

-4-

At the hearing, the bankruptcy court continued the matter to September 12, 2017, so that Ms. Shin could serve the Motion on the twenty largest unsecured creditors and provide the court with a copy of her proposed motion for appointment of the receiver. The order continuing the matter stated that "The automatic stay remains in full force and effect pending the continued hearing on September 12, 2017."

At the September 12, 2017 hearing, the bankruptcy court stated that it was principally concerned that if a receiver were appointed in the DSF case that receiver would displace Mr. Altman as the manager. The court noted that the managerial rights were held by his estate and the appointment of receiver would destroy those rights. The bankruptcy court concluded that the appointment of a receiver would be a clear exercise of control and interference with property of the estate. For these reasons, the court denied Ms. Shin's request for relief from the automatic stay with prejudice. At the end of the hearing, the bankruptcy court stated that its ruling was a final ruling and requested Mr. Altman's counsel to lodge an order.

The bankruptcy court also made a docket entry that denied Ms. Shin's Motion with prejudice. However, the entry was not a dispositive order; it did not state that it was an order, was not mailed to counsel, or signed by the clerk who prepared it. Mullin v. Hamlin (In re Hamlin), 465 B.R. 863, 868 (9th Cir. BAP 2012). Ms. Shin filed a notice of appeal to this Panel prior to the entry of a written order denying her Motion.

Later, when reviewing the matter, the bankruptcy court decided that it needed a more comprehensive discussion regarding

-5-

its reasons for denying Ms. Shin's Motion and started drafting a Memorandum Decision and Order. While doing so, the bankruptcy court observed that neither party had briefed the factors for deciding whether to lift the automatic stay for cause under Kronemyer v. Am. Contractors Indem. Co. (In re Kronemeyer), 405 B.R. 915, 921 (9th Cir. BAP 2009) and In re Curtis, 40 B.R. 795, 799-801 (Bankr. D. Utah 1984). The court decided that it needed briefing on those factors.

Since Ms. Shin had filed a notice of appeal, the bankruptcy court sent out a statement requesting comments from the parties regarding its jurisdiction to vacate its prior ruling and established a briefing schedule.

Subsequently, although finding that the bankruptcy court had jurisdiction to enter a final written ruling on the matter despite Ms. Shin's appeal, the Panel remanded the matter to the bankruptcy court and suspended briefing until further notice.

On October 13, 2017, the bankruptcy court vacated its oral ruling, issued a briefing schedule, and set a hearing for further argument on Ms. Shin's request for relief from stay on November 28, 2017.

After receiving further briefing from the parties and conducting two additional hearings, the bankruptcy court issued its final Memorandum Decision and Order on December 19, 2017. The court found that Mr. Altman's managerial rights under the Operating Agreement were prepetition contract rights that were included in his bankruptcy estate. The court further found these rights along with Mr. Altman's Economic Interest in DSF

-6-

constituted the estate's most valuable and important assets.[2] The bankruptcy court concluded that the appointment of a receiver to manage DSF's business would affect and concern property of Mr. Altman's estate. Therefore, the automatic stay prevented Ms. Shin from proceeding in state court for the appointment of a receiver unless the bankruptcy court granted relief from stay for this purpose.

Next, the bankruptcy court considered the factors set forth in Kronemyer and Christensen v. Tucson Estate, Inc. (In re Tucson Estates, Inc.), 912 F.23d 1162, 1167 (9th Cir. 1990), in determining whether there was "cause" to grant relief from the automatic stay to Ms. Shin under § 362(d)(1). In the end, the court found that a majority of the relevant factors favored denying Ms. Shin's motion for relief from stay. Accordingly, the court denied Ms. Shin's request to lift the stay with prejudice.

Finally, the court considered Ms. Shin's argument that the automatic stay terminated under § 362(e) which was raised by Ms. Shin in her supplemental brief along with her analysis of the Kronemyer factors. The bankruptcy court determined that Ms. Shin's argument under § 362(e) was waived or should otherwise be decided against her for numerous reasons, including: (1) Ms. Shin had combined her request for relief from stay with other relief thereby waiving the time deadline in § 362(e)(2); (2) Ms. Shin waived her rights under § 362(e)(2)

---

[2] Although the court found Mr. Altman's managerial rights were valuable, it did not attach any number to that value.

-7-

because she made the argument too late and improperly included it in her supplemental brief which was limited to briefing the Kronemyer/Curtis factors; and (3) the bankruptcy court had made findings on the record which justified extension of the time deadline in § 362(e)(2) for good cause.

Having filed a premature notice of appeal from the bankruptcy court's oral ruling on her Motion which was subsequently vacated by the court, Ms. Shin filed a timely amended notice of appeal from the court's December 19, 2017 Memorandum Decision and Order.

### III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

### IV. ISSUES

Did the bankruptcy court err in finding that Mr. Altman's sole right to manage DSF as per the Operating Agreement was property of his estate and protected by the automatic stay?

Did the bankruptcy court abuse its discretion by denying Ms. Shin's request for relief from the automatic stay for "cause" under § 362(d)(1)?

Did the bankruptcy court err in finding that the automatic stay had not automatically terminated under § 362(e)(2)?

### V. STANDARDS OF REVIEW

Whether an asset is estate property and whether the automatic stay is applicable to a particular situation are conclusions of law reviewed de novo. Cty. of Imperial Treasurer-Tax Collector v. Stadtmueller (In re RW Meridian LLC),

-8-

564 B.R. 21, 27 (9th Cir. BAP 2017).  We review the bankruptcy court's interpretation of state law de novo.  Id.

The interpretation of a federal statute is a question of law also reviewed de novo.  Quintana v. Comm'r of Internal Revenue Serv. (In re Quintana), 915 F.2d 513, 515 (9th Cir. 1990).

We review an order denying relief from stay for abuse of discretion.  Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 914 (9th Cir. BAP 2011); In re Kronemyer, 405 B.R. at 919.

Whether Ms. Shin waived her argument under § 362(e)(2) for automatic termination of the automatic stay is reviewed for an abuse of discretion.  See Novato Fire Prot. Dist. v. United States, 181 F.3d 1135, 1141 (9th Cir. 1999) (reviewing waiver for an abuse of discretion).

We review a bankruptcy court's refusal to consider an untimely argument for abuse of discretion.  Nw. Acceptance Corp. v. Lynnwood Equip., Inc., 841 F .2d 918, 926 (9th Cir. 1988).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible or unsupported by evidence in the record.  Trafficschool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## VI. DISCUSSION

**A.  The bankruptcy court did not err in finding that Mr. Altman's sole right to manage DSF was property of his bankruptcy estate and protected by the automatic stay.**

On appeal, Ms. Shin does not dispute that Mr. Altman's 75% Economic Interest is property of his bankruptcy estate.  Rather,

she contends that Mr. Altman's sole right to manage DSF is not property of his estate because that right is terminable under California law if it is found that he has mismanaged DSF and a receiver should be appointed. She further argues that the automatic stay does not apply to her proposed state court action because a receiver would take control of DSF's assets, which are not property of Mr. Altman's estate. Further, her action would be against DSF, not Mr. Altman. Finally, she asserts that the state court is the only court with jurisdiction to appoint a receiver. We are not persuaded by any of these arguments.

When Mr. Altman filed his chapter 11 petition a bankruptcy estate was created by operation of law. § 541(a). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Id. The scope of § 541 is intended to be broad. United States v. Whiting Pools, Inc., 462 U.S. 198, 205 (1983). "'It includes all kinds of property, including tangible or intangible property. . . .'" Computer Commc'ns, Inc. v. Codex Corp. (In re Computer Commc'ns, Inc., 824 F.2d 725, 729 (9th Cir. 1987).

While § 541(a) provides whether an interest of the debtor is property of the estate, a debtor's property rights are defined by state law. Butner v. United States, 440 U.S. 48, 55 (1979); McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1078 (9th Cir. 2000). Therefore, we look to California law to determine whether Mr. Altman has any legal or equitable interest in the sole right to manage DSF granted to him under the Operating Agreement.

In California, operating agreements are enforceable

-10-

contracts. See Commercial Ventures, Inc. v. Scottsdale Ins. Co., CV15-08359, 2017 WL 1196462, at *6-7 (C.D. Cal. Mar. 22, 2017); Dunbar v. Willis, No. D054146, 2010 WL 336406, at *5 (Cal. Ct. App. Mar.1, 2010) (operating agreement is the "contract among LLC members that govern[s] the members' rights and obligations."); Ratliff v. Cochise Agric. Properties, LLC (In re Ratliff), BAP No. AZ-10-1011, 2010 WL 6259955, at *7 (9th Cir. BAP Oct. 13, 2010), aff'd in part, rev'd in part and remanded, 490 F. App'x 896 (9th Cir. 2012) ("[o]perating agreements are construed according to the general principles of contract law."); see also Cal. Civ. Code § 1549 ("A contract is an agreement to do or not to do a certain thing.").

A contract right is "property" under California law. Cal. Civ. Code § 654 provides:

> The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Code, the thing of which there may be ownership is called property.

Accordingly, Mr. Altman's sole right to manage DSF is a contract right under the Operating Agreement and thus is the "property" under California law.

It is well settled that prepetition contract rights are included within the Bankruptcy Code's definition of bankruptcy estate property. Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir.1984); see also Sliney v. Battley (In re Schmitz), 270 F.3d 1254, 1258 (9th Cir. 2001) (listing additional Ninth Circuit cases); Johnson v. Taxel (In re Johnson), 178 B.R. 216, 218-19 (9th Cir. BAP 1995) (holding that proceeds of contracts rights arising from prepetition sales contract were estate

-11-

property).

Furthermore, although Mr. Altman's sole right to manage DSF is a non-economic right, numerous cases recognize that membership in a limited liability company may confer both economic and non-economic rights and that both fall within the § 541(a)'s definition of estate property. See Fursman v. Ulrich (In re First Protection, Inc.), 440 B.R. 821, 830 (9th Cir. BAP 2010) ("We conclude that all of the Debtor's [members] contractual rights and interest in Redux [LLC] became property of the estate under § 541(a) by operation of law when they filed their petition."); In re Tarkanian, 562 B.R. 424, 455 (Bankr. D. Nev. 2014) ("If the member files a chapter 7 petition, both the member's economic and non-economic interests become property of the bankruptcy estate and the bankruptcy trustee may exercise the management rights, if any, that the debtor has in the limited liability company."); Caymus Ventures, LLC v. Jundanian (In re Jundanian), Adv. No. 11-00185, 2012 WL 1098544, at *5-6 (Bankr. D. Md. Mar. 30, 2012) (concluding that the member's voting and management rights become property of the estate upon the filing of his bankruptcy petition); Sheehan v. Warner (In re Warner), 480 B.R. 641, 653 (Bankr. W. Va. 2012) (the debtor's economic and non-economic rights in a limited liability company became property of the estate upon the filing of a bankruptcy petition); Klingerman v. ExecuCorp LLC (In re Klingerman), 388 B.R. 677, 679 (Bankr. E.D.N.C. 2008) (holding that debtor's interest in an LLC—including both economic and non-economic rights—are property of the estate); see also Gould v. Antonelli (In re Antonelli), 4 F.3d 984 (4th Cir. 1993) ("When bankruptcy

-12-

proceedings commenced, Antonelli's general partnership interests became the property of the Debtor's bankruptcy estate. Both the economic interest in the partnerships and the right to participation in the management of the partnerships' affairs vested in the estate.").

The case of Colonial Realty Co. v. River Bank Am. (In re Colonial Realty Co., 122 B.R. 1 (Bankr. D. Conn. 1990), illustrates the enforcement of the automatic stay under circumstances similar to those here. In Colonial Realty, the debtor had an agreement with the owner of real property in California to manage that property. The owner defaulted on its loan for the purchase of the property, and the secured lender (and the defendant in the Colonial Realty case) subsequently obtained a court-appointed receiver in the context of a California foreclosure action. The bankruptcy court held that the defendant lender's acts "in removing the debtor from such management control were direct acts to obtain possession of property of and from the estate." Id. at 4; see also Edisto Resources Corp. v. McConkey (In re Edisto Resources Corp.), 158 B.R. 954, 957 (Bankr. D. Del. 1993) (automatic stay was violated by minority shareholders' state court action requesting appointment of receiver for corporation in which Chapter 11 debtors were majority shareholders; appointment of receiver would control debtors' joint interest in management of corporation) (citing Colonial Realty). Similarly, as the bankruptcy court here found, appointment of a receiver would remove Mr. Altman from his management role in DSF. Therefore, it would result in a violation of the automatic stay.

-13-

It is unnecessary to delve any deeper into the case law cited by Ms. Shin regarding the applicability of the automatic stay to non-debtor third parties because the bankruptcy court's Memorandum Decision correctly found the holdings in <u>Chugach Timber Corp. V. N. Stevedoring & Handling Corp. (In re Chugach Forest Prods.)</u>, 23 F.3d 241 (9th Cir. 1994), <u>Pintlar Corp. v. Fid. & Cas. Co. (In re Pintlar Corp.)</u>, 124 F.3d 1310 (9th Cir. 1997); and <u>United States v. Dos Cabeza Corp.</u>, 995 F.2d 1486, 1491 (9th Cir. 1993) did not apply under these circumstances. While it is well-settled that property owned by a non-debtor third party generally lies outside the scope of property of the estate and is not protected by the automatic stay, DSF's assets are not at issue in this case. Rather, it is Mr. Altman's sole right to manage DSF that is property of his estate.

In sum, under the Operating Agreement, Mr. Altman had the prepetition contractual right to manage DSF. The bankruptcy court correctly found that this non-economic contractual right to manage DSF was property of Mr. Altman's estate under § 541(a)(1) and therefore protected by the automatic stay.

**B.  The bankruptcy court did not abuse its discretion in denying Ms. Shin's motion for relief from stay for "cause."**

As alternative relief in her Motion, Ms. Shin asked the bankruptcy court to lift the automatic stay for "cause" under § 362(d)(1).  Section § 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

-14-

What constitutes "cause" for granting relief from the automatic stay is decided on a case-by-case basis. In re Kronemyer, 405 B.R. at 921.

Among factors which the bankruptcy court may consider when deciding whether to lift the stay to permit litigation in another forum are considerations of judicial economy, the expertise of the state court, prejudice to the parties and whether exclusive bankruptcy issues are involved. In re Kronemyer, 405 B.R. at 921. In Kronemyer, the Panel agreed that the so-called Curtis factors articulated in In re Curtis, 40 B.R. at 799-800 are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow litigation to continue in another forum. Id. The Curtis factors include:

(1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and (12) The impact of the stay on the parties and the 'balance of hurt.'

Also relevant is a non-exclusive list of factors identified in Tucson Estates, 912 F.23d at 1167, that suggest cause for permissive abstention and, consequently, for relief from stay. Those factors include:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Although the above referenced factors may be considered by the bankruptcy court, "cause" is a generic concept without a specific definition that is committed to the sound discretion of the bankruptcy court on a case-by-case basis. Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.), 96 F.3d 346, 351–52 (9th Cir. 1996).

The bankruptcy court conducted its analysis mostly under the Kronemyer and Tucson Estate factors and found that a clear majority of the factors favored denying Ms. Shin's motion for relief from stay with prejudice. Among other things, the bankruptcy court found:

• The process and appointment of a receiver would jeopardize the bankruptcy court's efficient administration of

-16-

the estate because a receiver would become the manager of DSF.

- Bankruptcy issues predominated with the issues raised by Ms. Shin because the ultimate disposition of the bankruptcy estate's exclusive managerial rights with respect to DSF involved and implicated a host of bankruptcy issues.

- The receivership action was connected to Mr. Altman's case because if a receiver was appointed, the court's authority over the management of the estate's principal asset could become limited or in jeopardy.

- Because the matter involved a motion for relief from stay and the appointment of a receiver, the matter involved the bankruptcy court's core jurisdiction and would impact the administration of the estate.

- There would be potential prejudice to creditors of Mr. Altman's estate because a receiver would have no fiduciary duties to those creditors.

According to the court, these factors favored denying relief from the automatic stay.

The bankruptcy court properly applied the factors for determining "cause" set forth in <u>Kronemyer</u>, <u>Tucson Estates</u>, and <u>Curtis</u>, weighing the relevant factors and concluding that the appointment of a receiver would adversely impact Mr. Altman's ability to reorganize and affect the administration of his estate. Accordingly, the bankruptcy court did not abuse its discretion by denying Ms. Shin's motion for relief from the

automatic stay for "cause" under § 362(d)(1).[3]

**C.  The bankruptcy court did not err by finding that Ms. Shin waived the operation of § 362(e).**

Section 362(e)(2) provides for the termination of the automatic stay in chapter 11 cases in which the debtor is an individual 60 days after a request for relief from stay is made by a party in interest unless

> (A) a final decision is rendered beginning on the date of the request; or (B) such 60-day period is extended -- (i) by agreement of all parties in interest; or (ii) by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

Ms. Shin argues that the automatic stay imposed against Mr. Altman's managerial rights terminated by operation of law once the bankruptcy court vacated its oral decision by order on October 13, 2017, and continued the matter to November 28, 2017, and then again to December 7, 2017.  Ms. Shin concedes her counsel agreed to the initial continuance of her Motion from July 25th to September 12, 2017, but contends she did not agree

---

[3] Although many provocative questions were asked by the Panel during oral argument regarding potential conflicts that could arise for a receiver appointed in DSF's estate, or for a trustee appointed in Mr. Altman's case, these issues were not raised or considered by the bankruptcy court.  We thus do not consider them for the first time on appeal. Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004).  Moreover, we are unable to discern why the bankruptcy court denied Ms. Shin's motion for relief from stay "with prejudice" under these circumstances.  However, we cannot consider any claims that were not specifically and distinctly argued in a party's opening brief. Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994)).

-18-

to any further continuances. Therefore, the condition under § 362(e)(2)(B)(i) for extending the 60-day deadline was not met.

Although Ms. Shin did not agree to any further continuances of her Motion beyond September 12, 2017, the automatic stay can also be extended beyond the 60-day period under § 362(e)(2)(B)(ii) "by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court." Ms. Shin ignores this provision. Furthermore, the Central District of California's Local Bankruptcy Rule (LBR) 4001-1(c)(3) provides in relevant part:

> Unless otherwise ordered, an order by the court to continue a hearing under 11 U.S.C. § 362 to a later date is deemed to include an order continuing the stay in effect until the conclusion of the hearing on such later date.

Here, Ms. Shin concedes that the automatic stay had not terminated by operation of law under § 362(e)(2) any earlier than the bankruptcy court's October 13, 2017 Order Vacating Oral Ruling And Setting Briefing and Hearing Schedule. In that order, the bankruptcy court clearly continued the hearing on Ms. Shin's motion for relief from stay in order to give the parties an opportunity to brief the Kronemyer/Curtis factors because they had not previously done so. Further, the factors were relevant to the court's decision whether to grant Ms. Shin's request for relief from stay. Accordingly, the order shows that the hearing on Ms. Shin's motion for relief from stay was continued for a specific period of time (until November 28, 2017) as the court found was required for "good cause" described in its findings (briefing needed from both parties on the

-19-

Kronemyer/Curtis factors). Furthermore, under LBR 4001-1(c)(3), the bankruptcy court's order continuing the matter to a later date "is deemed to include an order continuing the stay in effect until the conclusion of the hearing on such later date." Therefore, the automatic stay did not terminate by operation of law as Ms. Shin contends. This same analysis applies to the continuance of Ms. Shin's Motion from November 28, 2017, to December 7, 2017.

While courts have found that a party may implicitly waive any right it had to assert automatic termination of the automatic stay under § 362(e), we cannot find an implicit waiver here. An implicit waiver is generally found when the creditor takes some action which is inherently inconsistent with adherence to the time constraints of § 362(e). Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Grp., Ltd. (In re Wedgewood Realty Grp., Ltd.), 878 F.2d 693 (3rd Cir.1989) (recognizing implicit waiver when creditor takes some action which is inherently inconsistent with adherence to the time constraints of section 362(e); J.H. Streiker & Co., Inc. v. SeSide Co., Ltd. (In re SeSide Co., Ltd), 155 B.R. 112, 116 (E.D. Pa. 1993) (Implied waiver may be found where a creditor's actions are clearly inconsistent with an intention to insist on its rights.).

Ms. Shin did not object to the continuance of her request for relief from stay at the time or shortly after the bankruptcy court issued its October 13, 2017 order. Instead, she waited until she filed her brief on the Kronemyer/Curtis factors on October 27, 2017. Nonetheless, we cannot conclude that

-20-

Ms. Shin's delay in raising her argument or combining it with her briefing of the <u>Kronemyer/Curtis</u> factors involved an implicit waiver. It was the bankruptcy court's actions that required the extension of the automatic stay under § 362(e)(2). To the extent the bankruptcy court determined waiver occurred, it was harmless error because we can affirm on any ground supported by the record, even if it differs from the bankruptcy court's stated rationale. <u>Pollard v. White</u>, 119 F.3d 1430, 1433 (9th Cir. 1997).

In sum, we conclude that there was no automatic termination of the stay because the condition in § 362(e)(2)(B)(ii) was met; i.e., the bankruptcy court extended the stay for a specific period of time for good cause.

### VII. CONCLUSION

For the reasons stated, we AFFIRM.

-21-